■ Rock Ridge Townhouses, Inc., Appellant, v Village of Tupper Lake, Respondent. — Appeal from a judgment of the Supreme Court in favor of defendant, entered February 28, 1983 in Franklin County, upon a decision of the court at Trial Term (Ford, J.), without a jury. In 1977, plaintiff, then known as Rock Ridge Condominiums, Inc., intended to construct a 78-unit condominium project in the Village of Tupper Lake. In order to complete this plan and to prepare their offering statement for bank financing purposes, a commitment from the village to provide streets and utilities to the boundaries of the proposed project was required. On March 21, 1977, the village board unanimously approved a resolution which, in pertinent part, states: "That the Village of Tupper Lake does assure necessary street construction, as well as the facilities to provide adequate water, sewage and electrical service to the Rock Ridge Condominiums, Inc. firm at the easterly bounds of their lands * * *. The Village will proceed with necessary construction as rapidly as possible * * * subject to the needs generated by the corporation's construction progress." Adoption of the resolution was based on drawings, plot plans and engineering surveys depicting elevations and building locations. The board was also advised that topography considerations necessitated that the project be developed in two phases, the first phase approximately 30 feet higher than the second, and that separate sewer lines to each of the two elements of the project would be required. About one year later at a board meeting held on April 17, 1978, plaintiff informed the board that, because of financing difficulties, townhouses rather than condominiums would be constructed.[*] The board was also advised that 13 units were scheduled for completion by August, 1978 and that the need for servicing the area with all utilities and access roads was the same as with the original plans. Thereupon, the board reaffirmed the original resolution committing the village to provide adequate water, sewer and electrical services to the easterly boundary of plaintiff's property. During 1978, when 13 townhouses were constructed on the upper level, or phase I, of the project, water, electrical and sewage utilities were provided by the village to the easterly edge of plaintiff's property. During the following year, however, when construction of an additional 18 units was underway on the lower level, or phase II, the village refused to run a sewer line to the lower easterly edge of plaintiff's lands. As a consequence of the village's refusal, plaintiff installed a temporary sewer system in October, 1979 which was replaced by permanent sewer lines in the summer of 1981. Thereafter, plaintiff commenced this action against the village to recover the $40,000 cost of installing the sewer line. After a nonjury trial, Trial Term found that there was "no contractual or legal basis which would support this action for money damages". This appeal by plaintiff ensued. Since the village acknowledges that the resolution adopted by its board of trustees on March 21, 1977, and reaffirmed on April 17, 1978, created a contractual obligation binding on the village (see *Village of Lake George v Town of Caldwell*, 3 AD2d 550, affd 5 NY2d 727), our sole concern is whether the village breached the terms of the subject resolution or, as it contends, it did all that it was required to do. The cardinal rule in the interpretation of contracts is that the intention of the parties is to be ascertained and effect is to be given to that intention as derived from the language employed. Here, the subject resolution unquestionably reflects the intention of the parties to commit themselves to the construction of the townhouse project for their mutual benefit. The resolution also clearly commits the village to the installation of water, sewer and electrical services to the easterly boundaries of

* Plaintiff changed its corporate name to Rock Ridge Townhouses, Inc.

plaintiff's property. The sole issue, therefore, is whether the reaffirmation of the original resolution by the village only committed it to provide utility services to the easterly boundaries of plaintiff's property where the first 13 townhouses were constructed, or, as plaintiff contends, to the entire project of 31 townhouses on two different levels. With respect to this issue we find the phrase "at the easterly bounds of their lands", in terms of the village's commitment to provide utility services, to be ambiguous and not understandable without explanation. When a term of a written contract requires definition in order to make its meaning clear, it is always permissible to receive extrinsic evidence to assist in the search for the intended meaning. Here, the trial court excluded the proffered testimony of plaintiff's president, relating to what he told the board members about the two levels of construction, as well as the testimony of the man who was Mayor of the village at the time the subject resolution was passed. Such proof might well have indicated the intentions of the parties with respect to the location of utilities when the resolution was adopted and reaffirmed. Such exclusions, in our view, constitute reversible error requiring a new trial. Turning to the issue of damages, we also conclude that the trial court erred in sustaining the village's objection to the receipt in evidence of plaintiff's exhibit No. 23, a bill for $25,000 from D & M Corporation to Rock Ridge Townhouses, Inc., for services rendered in constructing the sewer line to the lower level of plaintiff's property. Plaintiff's developer and engineer both testified that the work was performed and the cost was reasonable. Further, D & M's accountant testified that the account was kept and made in the due course of business of D & M Corporation. Clearly, the business records exception to the hearsay rule, CPLR 4518, permits introduction into evidence of any record made in the course of a regularly conducted business, provided it was the regular course of business to make such a record. Circumstances surrounding the making of such a record, such as the alleged interest of plaintiff's president in D & M Corporation which performed the work, does not affect admissibility; it is merely a consideration affecting the weight to be given to the admitted evidence (see *Bishin v New York Cent. R.R. Co.*, 20 AD2d 921, 922). For all these reasons, we hold that the matter must be remitted for a new trial. Judgment reversed, on the law, without costs, and matter remitted to Trial Term for a new trial. Mahoney, P.J., Casey, Mikoll, Levine and Harvey, JJ., concur.