**In re TMH CORPORATION, d/b/a Holbrook's, Debtor.**

**TMH CORPORATION, d/b/a Holbrook's, Plaintiff,**

**v.**

**1313 THIRD REST. INC. and Louis Katz, Defendants.**

**Bankruptcy No. 84 B 10907 (PA). Adv. No. 84–6160A.**

United States Bankruptcy Court, S.D. New York.

July 11, 1986.

Finkel, Goldstein & Berzow, New York City by Neal Rosenbloom, for debtor-plaintiff.

Isaac Nutovic, New York City, Trustee.

Gerst & Pullin, Garden City, N.Y., by Allan L. Pullin, for defendants.

### MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

PRUDENCE B. ABRAM, Bankruptcy Judge.

On June 19, 1984, TMH Corporation, d/b/a Holbrook's ("TMH") filed a volun-

tary petition under Chapter 11 of the Bankruptcy Code and continued as a debtor-in-possession. Thereafter, on or about September 21, 1984 TMH instituted this adversary proceeding seeking (i) a declaratory judgment to determine the validity, priority and extent of alleged lien claims of 1313 Rest.Inc. ("1313") and Louis Katz ("Katz") (collectively the "Defendants") against TMH's physical assets and leasehold; and (ii) authority to sell its assets free and clear of all liens. On March 17, 1985 the court approved the sale of TMH's assets and leasehold free and clear of liens, with the liens of the Defendants, if any, to attach to the proceeds of sale. Defendants filed an answer on or about October 16, 1984 which generally denies TMH's claims and asserts counterclaims seeking enforcement of contractual obligations contained in agreements related to the purchase and sale of 1313's restaurant business located at 1313 Third Avenue, New York, New York (the "Restaurant"). On January 10, 1985, TMH moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7056. Thereafter the case was converted to one under Chapter 7 and Isaac Nutovic was appointed the Trustee. The Trustee has continued the prosecution of TMH's motion for summary judgment with the submission of a Reply Memorandum of Law and with his appearance at a hearing in support of the motion.

BACKGROUND

On or about November 21, 1977, 1313, as seller, entered into a contract of sale with Thomas L. Holbrook and Robert L. Viner, as buyer (the "Buyer") for the purchase of the Restaurant.[1] The Buyer subsequently transferred its interest in the Restaurant to TMH.[2] The contract of sale provided for 1313's assignment to the Buyer of its lease for the restaurant premises (the "Lease") as granted to 1313 by the property's owner, Bana Realty Corp. (the "Owner"). As security for the unpaid balance of the purchase price, 1313 was granted a lien and security interest covering all of the Restaurant's equipment, fixtures and machinery. This security interest was perfected by the proper filing of UCC-1 Financing Statements in March 1978. Perfection of the security interest lapsed in March 1983, over a year before the petition was filed, however, when no continuation statements were filed and more than five years elapsed from the time of the initial filings.[3] The contract of sale also provided, as additional security, that the Buyer reassign the Lease back to 1313.[4] It was also provided that 1313 would sub-lease the premises to the

---

1. The November 21, 1977 contract of sale provided for consideration for the sale of the Restaurant in the amount of $400,000 payable as follows: $40,000 down payment; $45,000 cash payment upon closing of title; and the balance of the purchase price totalling $315,000 payable by a series of 144 promissory notes, each in equal monthly installments of $2,187.50 bearing interest at a rate of 7% per annum.

2. Subsequent to the sale of the Restaurant, 1313 assigned and transferred its interest as seller to defendant Katz by an agreement dated May 9, 1979.

3. Under § 9-403 of the Uniform Commercial Code, a financing statement loses its effectiveness after a period of five years. Thereafter a continuation statement must be filed. Section 9-403(2) provides in pertinent part:

   "Except as provided in subsection (6) a filed financing statement is effective for a period of five years from the date of filing. The effec-

tiveness of a filed financing statement lapses on the expiration of the five year period unless a continuation statement is filed prior to the lapse ... Upon lapse the security interest become unperfected, unless it is perfected without filing. If the security interest become unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse."

4. Provision 3B of the sales contract provided that:

   "the Buyer agrees to deliver to the Seller at the Closing the lease covering the premises herein together with an assignment thereof, which lease and assignment shall be held by the Seller's attorney in escrow until payment in full ... of the purchase price herein. In the event of a default in the payment of the indebtedness which remains uncured by Buyer ... the Seller's attorney ... is hereby authorized to deliver said lease and assignment to the Seller."

Buyer.[5] 1313 recorded neither the Lease nor the reassignment of the Lease from the Buyer. On the other hand, TMH recorded neither the Lease assignment nor the sublease. The Buyer took possession of the premises.[6] However, 1313 retained exclusive physical possession of the Lease and the Lease assignment documents.

POSITIONS OF THE PARTIES

TMH asserts that the Defendants' alleged security interest and lien covering TMH's personal property is inferior and subordinate to its rights as debtor-in-possession[7] due to the Defendants' failure to file UCC-1 continuation statements as required under Section 9-403(2) of the New York Uniform Commercial Code. TMH also seeks to invalidate the Defendants' alleged security interest upon TMH's leasehold interest on the basis of the Defendants' failure to file an appropriate recording of TMH's reassignment of the Lease to it. TMH asserts that by virtue of the nonrecording of any interest of the Defendants' in the leasehold the Defendants' interest is subject to TMH's avoiding powers under Bankruptcy Code § 544(a)(3).

Defendants argue that under the circumstances of this case a hypothetical lien creditor could not attain the status of a bona fide purchaser under New York State law and therefore cannot avail itself of the Code § 544 avoiding powers. The Defendants assert that despite the nonrecording of the Lease or any subsequent conveyance, under New York law the hypothetical purchaser in this case would have constructive notice of facts sufficient to impose a burden of inquiry as to the nature and genuineness of TMH's unrecorded interest. The natural consequence of any reasonable prudent inquiry, Defendants argue, would be the disclosure of the Defendants' security interest, thereby preventing TMH from attaining the status of a bona fide purchaser.

Defendants also assert that, as collateral security, its physical possession of the original documents of title provides another basis for sustaining its security interest in the leasehold. They claim that their physical possession of the original Lease and Lease assignment constitutes " 'constructive possession' of the leased premises and actual possession of the title thereto." In support of this position Defendants argue that an alternative means of perfecting a

---

5. The sublease specifically provided in Section No. 8:

"The parties acknowledge and agree that this sublease agreement is entered into as part of the collateral security given by the tenant (debtor) herein to secure the payment of the notes and the performance by the Tenant (debtor) of the terms and conditions of the Chattel Mortgage or Conditional Sales Contract described in paragraph '3' hereof, and accordingly it is expressly agreed that upon the due payment of the notes aforesaid, that this sublease shall thereupon terminate and come to an end."

6. The last *recorded* interest in the subject premises is that of the fee owner Bana Realty Corp. Section 291 of the New York Real Property Law provides in pertinent part:

"A conveyance of real property, within the state ... may be recorded.... Every such conveyance not so recorded is void as against any person who subsequently purchases ... the same ral property or any portion thereof ... in good faith and for valuable consideration from the same vendor or assignor ... and whose conveyance, contract or assignment is first duly recorded."

Under Section 291 a lease of three years or more is held to be within the scope of its provisions. *City Bank v. Hocke*, 168 App.Div. 83, 153 N.Y.S. 731 (1915). Section 291-c also provides for the alternative filing of a memorandum of a lease:

"In lieu of the recording of a lease for a term exceeding three years, ... there may be recorded with like effect a memorandum of such lease, executed by all persons who are parties to the lease, and acknowledged or proved, and certified, in the manner to entitle a conveyance to be recorded...."

7. Though this Chapter 11 case was later converted to Chapter 7 followed by the appointment of a trustee, the summary judgment motion under consideration was filed while the case was still in its Chapter 11 phase. It should be understood that under Bankruptcy Code § 1107(a) the debtor-in-possession assumes the powers of a trustee. The prosecution of this action was continued without material change by the trustee after its appointment. For convenience this court refers to TMH throughout this decision rather than to the Trustee.

security interest under the Uniform Commercial Code is by taking possession of the collateral. Additionally, Defendants argue, by way of analogy, that under certain circumstances under New York law an alternative for documenting the owner's title to real property is the presentation of the original Torrens Title Deed, without whose delivery to the purchaser the premises cannot be conveyed.

## DISCUSSION

There are no material facts in dispute in this case. The Defendants have conceded that perfection of their security interest in TMH's personal property and fixtures has lapsed by virtue of the failure to file continuation statements. The only remaining legal dispute is over the validity of the Defendants' claimed security interest in the Lease. Defendants' counterclaims depend upon the resolution of that issue. In that connection the central legal question is whether the Debtor can assume the status of a bona fide purchaser which would allow TMH to avoid Defendants' security interest in the leasehold pursuant to Bankruptcy Code § 544(a)(3).

The parties agree that the controlling decision is that of Judge Lifland in *In re Hardway Restaurant, Inc. (Debtor v. Once Upon a Stove, Inc.)*, 31 B.R. 322 (Bankr.S.D.N.Y.1983), whose facts are nearly identical to those herein.[8] The Defendants, however, argue that there are certain facts which distinguish this case from *Hardway* and therefore require a different outcome. This court agrees.

*Hardway* makes it clear that TMH's power to avoid the transfer of its leasehold interest to the Defendants pursuant to its Code § 544 avoidance powers is determined by whether under New York law some kind of notice other than recording would bar its attaining the status of a bona fide purchaser. Under Judge Lifland's *Hardway* analysis of the relevant New York law, it is clear that the nonrecording does not necessarily preclude the possibility that some other form of constructive notice could prevent satisfaction of the "good faith" requirement under Section 291 of New York Real Property Law necessary to qualify as a bona fide purchaser.

In both this case and *Hardway*, the Lease interest of the debtor-in-possession is unrecorded.[9] Under the *Hardway* analysis the absence of such a recording imposes a burden of further inquiry upon the purchaser to ascertain the nature and genuineness of the debtor-seller's lease interest. Since the purchaser is charged with what a reasonable inquiry concerning his grantor's title would have revealed by an examination of the record, the absence of a recording of the debtor-seller's leasehold interest is a defect requiring further inquiry. The crucial question is whether the purchaser's inquiry would naturally and necessarily lead to a disclosure of the Defendants' unrecorded lease interest. It is on this point that a crucial factual distinction exists between *Hardway* and this case.

Judge Lifland found that the purchaser's inquiry would reveal that the premises were originally leased to the defendant-assignor by its owner and that the lease was thereafter assigned to the debtor-seller. He states that "this information is easily verified by providing the bona fide purchaser with copies of the unrecorded [prime lease and subsequent assignment to the debtor-seller]." He concludes (with an implicit assumption that the debtor-seller

---

8. Finding *Hardway* so similar to the facts of this case and so central to the legal issues involve here, this court assumes that the reader is fully conversant with the text of Judge Lifland's *Hardway* decision. In applying that case to the facts of the matter under consideration herein, this court refers the reader to Judge Lifland's legal analysis and the legal authorities cited in *Hardway* on pages 328 to 331 and finds no necessity for their restatement.

9. Since the discussion which follows concerns rights of the debtor-in-possession (or Trustee) (e.g. TMH) as against those of a hypothetical purchaser, for sake of clarity the discussion hereinafter shall make the following identifications: the debtor-in-possession as "debtor-seller"; the hypothetical purchaser as "purchaser"; the debtor-in-possession's grantor as "defendant-assignor". The asserted property interest of the debtor-in-possession in the subject premises as "leasehold".

would not reveal the facts of its reassignment of the lease back to the defendant-assignor for security purposes) that since these documents make no reference to the defendant-assignor's security interest a prospective buyer would not be given notice of the defendant-assignor's unrecorded lien interest.

■ The important distinction between this case and *Hardway* is that in *Hardway* the purchaser's inquiry as to the genuineness of the debtor-seller's interest could have been satisfied upon examination of the debtor-seller's documents of title and inquiry to the landlord. By providing the purchaser with genuine documents which validate only the initial assignment of its leasehold interest and that of its assignor, the debtor-seller could have hidden from the purchaser its subsequent reassignment of the leasehold for security purposes if inquiry to the landlord would not necessarily reveal it. This court agrees that where the debtor-seller is in possession of the premises, able to produce apparently genuine original documents of title and a current estoppel certificate from the landlord and the purchaser has no reason to question their validity no further inquiry is required.[10]

■ In the matter before the court, however, such is not the case. Here, as TMH possesses neither the original Lease nor an original of the lease assignment instrument through which it claims to have obtained its right to possession of the subject premises, the purchaser must engage in the next level of inquiry. That inquiry is most naturally and logically directed at TMH's assignor, the Defendants, in order to verify

the genuineness of TMH's interest in the premises. Moreover, it is consistent with traditional property law that the flow of inquiry directed at establishing an unbroken chain of title trace the title of the immediate grantee/seller back to its original grantor. See *Elman v. Harvey*, 93 Misc.2d 634, 403 N.Y.S.2d 428, 431–2 (S.Ct. Suffolk Co.1978) ("The 'chain of title' to real property is the succession of deeds or other instruments by which title is traced back to its original source"). There has been no showing that the inquiry could not have been made and accomplished directly to the assignor, the debtor's apparent grantee, whose identity would emanate either from a direct inquiry to the debtor-seller as to the source of its leasehold interest or from an examination of the non-original copies of the debtor-seller's lease assignment document. It is obvious that in this case once the inquiry is made of the defendant-assignor the Defendants' security interest in the leasehold would be revealed. That hypothetical disclosure prevents TMH from attaining the status of a bona fide purchaser without which the Defendants' security interest is not subject to avoidance.

This court recognizes that an inquiry might be directed at the Owner from whom the Defendants' leasehold interest was derived either as an alternative means for verifying the genuineness of the debtor-seller's claimed leasehold title or, as in *Hardway*, in order to ascertain that the required consent to the lease assignment had been granted by the owner. Even where the purchaser has satisfied its inquiry as to the validity of the debtor-sell-

**10.** This court does not agree with TMH's conclusion that Judge Lifland was referring to non-original copies of documents as those which the debtor was capable of producing in *Hardway*. This court believes that the debtor has distorted Judge Lifland's exposition of the facts in that case by stating in its Reply Memorandum of Law that Judge Lifland stated that "only 'copies' of the unrecorded leases need be provided." The full context of Judge Lifland's use of the word "copy" does not lend itself to the meaning ascribed to it by the debtor. He wrote "This information is easily verified by providing the

bona fide purchaser with copies of the unrecorded leases." The lack of any discussion as to the existence or lack thereof of original documents suggests that he did not intend such a meaning. Furthermore, the fact that in the same discussion he states that although unrecorded those instruments are "valid" and that a prospective purchaser would thus be satisfied that the leaseholds "are genuine" seems to contradict the meaning which the debtor attempts to attribute to Judge Lifland's use of the word "copy".

er's title by its production of original title instruments, where the consent of the owner is required for assignment or sublease another level of inquiry is required to ascertain that the debtor-seller's title was conveyed with the appropriate consents. In this case, having found that a "chain of title" inquiry directed at the assignor is appropriate and would result in the disclosure of the Defendants' security interest no further inquiry would be needed. This court need not speculate as to whether an inquiry directed initially at the owner for the purpose of establishing the chain of title might lead this court to a result different from that found in *Hardway*.[11]

The motion for summary judgment to the extent it seeks to invalidate the Defendants' personal property lien is granted. The motion is denied with repect to the Lease and the Defendants are found to have a valid lien on the Lease. The parties are directed to advise the court within twenty (20) days whether they are able to agree on the allocation of the proceeds of the sale of the Restaurant. If they are not, the court will fix a hearing to consider that aspect of this matter.

It is so ordered.

---

**11.** This court also notes that no different result would occur if TMH had moved for assumption of the sublease under Code § 365 since assumption of the sublease by TMH would require it to perform all of the terms and conditions of the sublease, including those providing for payment of the notes as additional rent.