In re LASERCAD
REPROGRAPHICS, LTD., Debtor.

Harold YOUNG, as Interim Trustee in
Bankruptcy for Lasercad
Reprographics, Ltd., Plaintiff,

v.

FARMINGDALE FOOD MARKET,
INC., Defendant.

FARMINGDALE FOOD MARKET,
INC., Defendant/Third
Party Plaintiff,

v.

STATE BANK OF LONG ISLAND,
Third Party Defendant.

Bankruptcy No. 86 B 11102 (BRL).
Adv. No. 87–6137A.

United States Bankruptcy Court,
S.D. New York.

Oct. 31, 1989.

Whitman & Ransom by Norman N. Kinel, New York City, for trustee.

Meltzer, Lippe, Goldstein & Wolf, P.C. by John E. Westerman, Ronald M. Terenzi, Mineola, N.Y., for Farmingdale Food Market, Inc., defendant/third party plaintiff.

Rivkin, Radler, Dunne & Bayh by Martin F. Brecker, New York City, for State Bank of Long Island, third party defendant.

DECISION ON MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Chief Judge.

## I. BACKGROUND

The instant motions for summary judgment arise in the context of an adversary proceeding brought by Harold Young, the Chapter 7 Trustee (the "Trustee") to determine the extent, validity and priority, if any, of an alleged security interest or lien of Farmingdale Food Market, Inc. ("Farmingdale") in the property of the debtor, Lasercad Reprographics Ltd. ("Lasercad/Debtor"). To make this determination requires an exploration into an intricate web of transactions and relationships including the purchase by the real property owner of a leasehold interest in his own real property.

The undisputed facts relevant to this controversy as described in the various Statements pursuant to Rule 13(h) of the Local Bankruptcy Rules (the "13(h) Statements")[1] are as follows:

On or about August 19, 1977, H.C. Bohack Co., Inc. assigned its interest as tenant (the "Lease") to Farmingdale pursuant to an assignment and bill of sale, with respect to commercial property located at 335 Main Street, Farmingdale, New York (the "Leasehold Property") owned by Staller Properties, Inc. ("Staller"). By letter dated January 10, 1979 from Farmingdale to Staller, Farmingdale Food exercised its right to extend the Lease for the period beginning January 15, 1980 and ending January 14, 1990.

Thereafter, Farmingdale's interest in the Lease was transferred to Lasercad via an Assignment of Lease and Assumption Agreement dated July 31, 1984 (the "Assignment Agreement"). The Assignment Agreement is the central focus of this controversy.

On or about January 21, 1986, State Bank of Long Island ("State Bank") loaned $300,000 to Lasercad (the "Loan"). As collateral security for the loan, Lasercad granted State Bank a leasehold mortgage in the premises (the "Leasehold Mortgage"). State Bank recorded the Leasehold Mortgage at the office of the County Clerk, Nassau County, New York, on January 23, 1986. Prior to the recordation of the Leasehold Mortgage, no mortgage on the Lease was recorded in the real property records of Nassau County. As discussed more fully herein, New York has adopted a race notice statute which provides that an unrecorded conveyance is invalid as against a subsequent purchaser for value who records without knowledge of the prior unrecorded instrument[2].

On June 20, 1986, Lasercad filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code (the "Code") and on September 10, 1986, the case was converted to one under Chapter 7 of the Code.

Subsequently, Farmingdale filed a notice of motion and application dated August 14, 1986 seeking relief from the automatic stay to allow it to execute upon its alleged possessory rights as provided in the Assignment Agreement. That motion was later incorporated into this adversary proceeding.

On November 5, 1987, upon application of the Trustee, this Court issued an Order directing certain parties in interest in Debtor's case to show cause why an omnibus order should not be entered, *inter alia,* approving the Trustee's proposed assumption of the Lease and sale of Trustee's right, title and interest in the Lease to

---

1. Local Bankruptcy Rule 13(h) provides that upon a motion for summary judgment the moving party is required to submit "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." The party opposing a motion for summary judgment must include "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."

Rule 13(h) further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

2. *See,* N.Y. Real Prop. Law § 291 (1978).

Staller, the fee owner. Simultaneously, the Trustee instituted this adversary proceeding pursuant to a complaint (the "Complaint") seeking judgment against Farmingdale (a) declaring that Farmingdale has no lien or other interest in the Lease or other property of Debtor, (b) determining Farmingdale's claim to be a pre-petition unsecured obligation of Debtor for an amount to be determined and fixed by the Court and to be treated in accordance with that level of priority, and (c) determining that Farmingdale may not object to the Trustee's proposed assumption of the Lease and sale of all his right, title and interest in and to Staller.

Farmingdale then joined State Bank as a third-party defendant praying the Court declare Farmingdale's interest to be superior to the prior recorded interest of State Bank.

On November 9, 1987, this Court approved the sale of the Leasehold Property to Staller, free and clear of liens for the amount of $450,000 with liens of Farmingdale and State Bank, if any, to attach to the proceeds of sale. The net proceeds of the sale amounted to approximately $427,362.55.

On April 11, 1988, the Trustee moved for entry of an order authorizing him to deposit the net proceeds with State Bank pending the resolution of the instant adversary proceeding. In conjunction with the Trustee's application, State Bank agreed to waive its right to continue to accrue interest on the loan after April 20, 1988 if the amount of money owed to it inclusive of interest and exclusive of legal fees accruing after November 17, 1987, was deposited in an account with State Bank pending the resolution of the instant adversary proceeding. On April 20, 1988, this Court entered an Order granting the Trustee's motion.

By notice of motion, State Bank brought the instant motion for summary judgment (the "Motion") pursuant to Federal Rules of Civil Procedure ("Federal Rules"), Federal Rule 56 made applicable herein pursuant to Bankruptcy Rule 7056 for an order adjudging (i) that State Bank holds a perfected first priority security interest and

mortgage upon the leasehold interest of Lasercad in certain real property described above which attaches to the proceeds of said leasehold interest pursuant to this Court's Order dated April 20, 1988; (ii) fixing State Bank's claim in the amount of $380,348.12 in addition to legal fees to be fixed by this Court; and (iii) directing that State Bank be paid $410,997.34 from the segregated account of the Trustee, maintained at State Bank.

Subsequently, Farmingdale cross-moved for summary judgment (the "Cross-Motion") for a judgment: (1) finding that Farmingdale held a first priority security interest in a lease of the property in question herein; (2) determining that Farmingdale's lien attached to the proceeds of the sale of such lease; and (3) fixing Farmingdale's claim in the amount of $364,848.67, in addition to legal fees to be fixed by the Court.

As previously set forth, it is undisputed that State Bank holds a recorded mortgage in the Leasehold Property. Nevertheless, Farmingdale maintains that it holds a prior unrecorded security interest entitling it to priority over the interest of State Bank. Farmingdale bases its assertion on the language of ¶ 8 of the Assignment Agreement which provides:

> The Assignee shall [assign] this Assignment of Lease and Assumption Agreement to the attorney for the Assignor who shall hold the same in escrow. If in the event that Assignor (sic) does not pay his rent in accordance with the terms of this agreement, and the Assignee is so notified by the attorney for the Assignor by registered mail, return receipt requested and by ordinary mail, with a right to pay said rent within 72 hours, then Assignor shall be entitled to enforce its rights hereunder in a summary proceeding.

Consequently, Farmingdale maintains that the language of ¶ 8 quoted above created a reassignment by Lasercad in its favor as collateral security. Furthermore, Farmingdale relies upon State Bank's alleged knowledge of this "reassignment" to

support its claim of prior right to that of State Bank.

In contrast, State Bank argues, *inter alia*, that the Assignment Agreement was merely an escrow arrangement and that the conditions of the escrow were never fulfilled nor was the allegedly escrowed document ever delivered out of escrow to Farmingdale. Furthermore, State Bank maintains that sometime in January, 1986, the escrow agent turned over *a fully executed original Assignment Agreement* to Lasercad; thus if an escrow had been created by the language of ¶ 8, then the escrow had been released as of January 1986.

It should be noted at this juncture, that whether or not the document which was turned over to State Bank was a fully executed original or merely a copy, is the one factual hurdle this Court had to overcome in order to be able to resolve this controversy in a summary fashion. It is undisputed, however, that a document was turned over by the escrow agent to State Bank. (Transcript at 42.) Consequently, a rather lengthy examination and comparison of State Bank's fully executed "original" and two other such documents was conducted at the hearing on this matter. It seems, although no one is positive on this issue, that there exists three executed "originals" or documents that appear to resemble "originals".[3] No claim has been made that any of the documents are forgeries.

In contrast, Farmingdale alleges that there exists only one "original" and that the other documents, including the document turned over to State Bank, are clearly "copies." In this regard, Farmingdale states that "it is undisputed that [Farmingdale's] President, Sam Zeibaq delivered the only executed original· ribbon copy of the Assignment Agreement to the offices of [Farmingdale's] attorney, Jack Easa, and that the executed original ribbon copy of the Assignment Agreement was never released by him." (Affidavit of John E. Wes-

terman at ¶ 6; *see also*, Farmingdale's 13(h) Statement at ¶ 16.)

Upon examining the three documents at the hearing, however, it was impossible to determine which documents were "copies" and which was the "original ribbon copy". Thus, this Court held at the hearing that "[i]t is clear that there [is] more than one original," a fact conceded on the record by Counsel for Farmingdale. (Transcript at 43–44; *see also*, n. 3, *supra.*)

Furthermore, in support of its summary judgment motion, State Bank asserts that it acted in good faith in making the loan to Lasercad and obtaining the Leasehold Mortgage as security therefor. In this regard, State Bank maintains that it gave valuable consideration for its mortgage, searched the real property records to discover any prior lien of record on the Lease, and obtained all the relevant documentation necessary to establish Lasercad's chain of title to the Lease; including a fully executed "original" Assignment Agreement thereby negating any pre-existing escrow arrangement. Thus, State Bank asserts that it acted in good faith by entering into the financing transaction with Lasercad only after finding no impediment to its Leasehold Mortgage.

State Bank also argues that Farmingdale's egregious conduct with respect to the transactions involved estops Farmingdale from asserting a lien in its favor. For instance, State Bank asserts that Farmingdale abetted in the creation of several documents any one of which, as previously mentioned and as discussed more fully hereinafter, a good faith purchaser could have reasonably believed was the original Assignment Agreement. Additionally, State Bank contends that if Farmingdale and its agent had properly created and maintained the Assignment Agreement in escrow, a third party purchaser, such as itself, would have been precluded from obtaining a mortgage on the property in good faith and without notice of Farmingdale's alleged interest. Thus, State Bank con-

---

**3.** The testimony of Jack Easa, Farmingdale's attorney demonstrates that there is a possibility that four fully executed copies may exist. *See,*

Brecker Affidavit at Exhibit 1 (Deposition of J. Easa dated January 29, 1988, at 15–17).

cludes, that Farmingdale, as the party who was in the best position to prevent the events which occurred, should bear the financial consequences of its acts and/or omissions and not an innocent third party.

Finally, the Trustee has filed papers supporting State Bank's Motion adjudging that State Bank holds a perfected first priority interest and a mortgage upon the leasehold interest of the Debtor, which security interest attached to the proceeds of the Trustee's sale of the leasehold interest pursuant to the April 20, 1988 Order. The Trustee opposes, however, fixing State Bank's claim in the amount sought of $380,348.12 in addition to legal fees and opposes any direction that State Bank be paid the full sum of $410,977.34 from the Trustee's account maintained at State Bank.

Moreover, the Trustee opposes Farmingdale's Cross–Motion since as argued by the Trustee, Farmingdale had no interest whatsoever in the Debtor's Lease and is not entitled to summary judgment in its favor. Further, the Trustee asserts that since Farmingdale has relied in its Cross–Motion on issues of motive and intent, issues which are factual in nature, summary judgment cannot be entered in its favor. Finally, the Trustee submits that Farmingdale is not entitled to any proceeds from the sale of the Lease as it is merely a pre-petition unsecured creditor entitled to a distribution if and when a distribution by the Trustee to general unsecured creditors is made.

## II. ISSUES

1) Whether the Assignment Agreement created security interest in the leasehold in question in favor of Farmingdale;
2) Whether State Bank is a Bona Fide Purchaser who acted in good faith, without either actual or constructive notice of Farmingdale's alleged prior collateral security interest; and
3) Whether the Trustee has a superior interest to that of Farmingdale's pursuant to § 544(a)(3) of the Code.

## III. DISCUSSION

Federal Rule 56(c) states that summary judgment shall be granted to the moving party if the court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d. 265, 267 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court is compelled to look beyond the "mere pleadings of the parties and consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence to determine whether there is a genuine issue for trial." *In re Esposito*, 44 B.R. 817, 821 (Bankr.S.D.N.Y.1984); *see also, In re Tobman*, 96 B.R. 429, 433 (Bankr.S.D.N.Y.1989); *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir.1981); *United States v. Matheson*, 532 F.2d 809, 813 (2d Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976). "[O]nly dispute over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *In re Tobman*, 96 B.R. at 433 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510).

Each of the parties agrees that there are no genuine material issues of fact which exist relevant to a determination of the conflicting rights of State Bank, Farmingdale and the Trustee to the proceeds of the property now on deposit in State Bank. However, both the Trustee and State Bank assert that there exist genuine material issues of fact relevant to granting Farmingdale's Cross–Motion for summary judgment.

For the following reasons, this Court finds that there are no issues of material fact which would preclude it from determining the issues, as a matter of law, which have been presented both in the Motion and Cross–Motion for summary judgment. Therefore, this Court grants partial summary judgment to State Bank and de-

nies Farmingdale's Cross–Motion for summary judgment.

1) *Whether the Assignment Agreement created a mortgage, lien or security interest in the leasehold in question in favor of Farmingdale.*

For the purposes of supporting Farmingdale's position that it is a secured creditor, ¶ 8 of the Assignment Agreement certainly cannot be characterized as standard legal boilerplate. It is an example of unclear, imprecise drafting. This Court agrees with State Bank that the natural reading of ¶ 8 indicates an intent to create an escrow of the Assignment Agreement rather than a further assignment. Paragraph 8 of the Assignment Agreement, based on its express language, indicates that the parties intended delivery to be made to an escrow agent, and not to the alleged grantee, Farmingdale.[4] Thus, theoretically, if the Assignment Agreement had actually been placed in escrow and kept in escrow, Lasercad would have been precluded from further assigning its interest because it would have had no document of title.

The word "escrow" is defined as follows: A writing, deed, money, stock, or other property delivered by the grantor, promisor or obligor into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition, and then by him delivered to the grantee, promisee or obligee. A system of document transfer in which a deed, bond or funds is delivered to a third person to hold until all conditions in a contract are fulfilled; *e.g.* delivery of deed to escrow agent under installment land sale contract until full payment for land is made.

*Black's Law Dictionary,* 5th ed., at 489. Thus, the "writing" in this case is the Assignment Agreement, and the "third person" is the attorney for the Assignor, Jack

Easa. Moreover, the "contingencies" are as follows: 1) non-payment of rent by Lasercad, 2) notice to Lasercad by Farmingdale, and 3) the lapse of three days without cure by Lasercad. Only after these three conditions were satisfied could Farmingdale come into possession of its alleged collateral security by enforcing its rights in a summary proceeding allegedly granted by ¶ 8 of the Assignment Agreement. Such a condition or contingency is an essential element of an escrow, and whether an instrument placed with a third party is "in escrow" depends upon both the intention and actions of the parties. 20 N.Y.Jur. Escrow § 4 at 209.

■ An escrow requires a valid contract between the parties and delivery of the escrow instrument. "In a broad sense, an escrow contemplates two deliveries. The first is that of the grantor to the escrow agent and the second is that from the escrow agent to the grantee ... the general rule is that title passes from the time of the second delivery." *In re Ellison Assoc.,* 13 B.R. 661, 672 (Bankr.S.D.N.Y.1981), *aff'd,* 63 B.R. 756 (S.D.N.Y.1983). For example, "[a] deed placed in escrow imposes an additional requirement to the passage of title: the conditions of the escrow must be satisfied. Performance of the condition or the occurrence of the contingency of the escrow are prerequisite to the delivery of the deed out of escrow." *Id.* at 670. *See also, Stanton v. Miller,* 58 N.Y. 192, 201 (1874); *Alexander v. Quality Leather Goods Corp.,* 150 Misc. 577, 579–80, 269 N.Y.S. 499, 502 (1934).

■ Applying the above analysis to the facts of this case, it appears that a limited purpose escrow agreement *may* have been created at the time of the Assignment Agreement.[5] Further, the essential final reassignment of the lease was to be effected by escrow delivery to Farmingdale. However, the reassignment never occurred

---

**4.** Although State Bank submits a thorough analysis to counter any possible allegations by Farmingdale that ¶ 8 of the Assignment Agreement is a mortgage, Farmingdale unequivocally agrees that ¶ 8 did not create nor was there ever an intent to create a mortgage. *See,* Affidavit of John E. Westerman at ¶ 5.

**5.** There is no escrow letter or document acknowledging the escrow by the escrow agent. (Transcript at 63).

because it was dependent upon satisfaction of the three conditions precedent enumerated above. Farmingdale has not alleged nor is there any evidence that Farmingdale gave the notice required by the Assignment Agreement. In fact, the Assignment Agreement speaks *in futuro*, that is, it contemplates the future delivery of the Assignment Agreement to Farmingdale upon default of Lasercad if all conditions precedent have been fulfilled. Under New York law, the assignment of a future right creates a lien which attaches only at such time as the right accrues. *Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836 (2d Cir.1974). As stated previously, the conditions precedent to such an occurrence were never consummated by Farmingdale and thus delivery was never accomplished. Consequently, Farmingdale did not retain a security interest in the Lease since the security interest was never perfected.

In contrast, Farmingdale maintains that ¶ 8 was intended to create a security interest in the Lease by collateral reassignment. Indeed, Farmingdale claims that it was the intent of Farmingdale and Lasercad to create a consensual lien in favor of Farmingdale. Further, Farmingdale asserts that because Lasercad defaulted on its payments prior to the filing of the Chapter 11 petition, the Lease was never property of the estate.

"A security interest is valid and enforceable only if there is evidence of an intent to create or retain a security interest." *In re O.P.M. Leasing Serv., Inc.*, 46 B.R. 661, 669 (Bankr.S.D.N.Y.1985); *see also, In re Miller*, 545 F.2d 916, 918 (5th Cir.), *cert. denied sub nom. Nuss v. Looney*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *Transport Equip. Co. v. Guaranty State Bank*, 518 F.2d 377, 380 (10th Cir.1975). In this regard, Farmingdale states that the intent of the parties was clear and that:

> [t]he assignment and the reassignment were accomplished in one document, and the purpose of that was to give notice to third parties that with respect to this title ... that if anyone wanted to check [Lasercad's] title and interest in the leasehold it would be obvious to them the

entire possessory interest was transferred back to Farmingdale [ ] in order to evidence Farmingdale's [ ] security and possessory rights in the premises, in the leasehold.

Transcript of the February 6, 1989 Hearing (the "Transcript") at 42.

In this case, although there might have been an intent by the parties to contemporaneously reassign the Lease to Farmingdale, such an intent is contradictory to the language of the Assignment Agreement.

> "The objective in any question of the interpretation of a written contract, of course, is to determine 'what is the intention of the parties as derived from the language employed.'" *Hartford Accident & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 171–72, 305 N.E.2d 907, 909, 350 N.Y.S.2d 895, 898 (1973) (quoting 4 S. Williston, A Treatise on the Law of Contracts § 600, at 280 (3d ed. 1961); *see also, Rock Ridge Townhouses, Inc. v. Village of Tupper Lake*, 99 A.D.2d 914, 914, 472 N.Y.S.2d 521, 523 (3d Dep't 1984). The intention of the parties must be gleaned from all corners of the documents, rather than from sentences or clauses viewed in isolation. *Tougher Heating & Plumbing Co. Inc. v. State of New York*, 73 A.D.2d 732, 733, 423 N.Y. S.2d 289, 290–91 (3d Dep't 1979); *see, Williams Press, Inc. v. State of New York*, 37 N.Y.2d 434, 440, 335 N.E.2d 299, 302, 373 N.Y.S.2d 72, 77 (1975). Furthermore, "[w]here contracts are in writing the rights of the parties should be determined by the plain meaning of the language used if possible." *Schuler–Haas Elec. Corp. v. Aetna Casualty & Sur. Co.*, 49 A.D.2d 60, 63, 371 N.Y. S.2d 207, 209 (4th Dep't 1975), *aff'd mem.*, 40 N.Y.2d 883, 357 N.E.2d 1003, 389 N.Y.S.2d 348 (1976).

*Pantone, Inc. v. Esselte Letraset Ltd.*, 691 F.Supp. 768, 771–72 (S.D.N.Y.1988). Furthermore,

> [i]t is only where there remains an ambiguity after examination of the language of the [contract] that parol evidence may be received to aid in its construction. *Arrathoon v. Pergament Oceanside*

*Corp.*, 53 Misc.2d 959, 961, 281 N.Y.S.2d 263, 265 (1965), *aff'd*, 26 A.D.2d 626, 272 N.Y.S.2d 1004 (2d Dep't 1966), *aff'd, on opn.*, at Special Term 19 N.Y.2d 923, 924, 228 N.E.2d 392, 393, 281 N.Y.S.2d 333, 334 (1967); 3 Warren's Weed, New York Real Property, Leases and Lettings, § 10.02. Even then parol evidence may only be used to fix the meaning of words of doubtful import and cannot contradict the express terms of the writing. *Brainard v. N.Y.C. R.R. Co.*, 242 N.Y. 125, 133, 151 N.E. 152, 154 (1926).

*Reltron Corp. v. Voxakis Enter., Inc.*, 57 A.D.2d 134, 395 N.Y.S.2d 276, 280 (4th Dep't 1977).

 In the instant case, ¶ 8 of the Assignment Agreement states that "[t]he assignee *shall* [assign] this Assignment Agreement to the attorney for the Assignor who shall hold the same in escrow." However, every other paragraph in the document that dealt with a present conveyance used the word "hereby". Moreover, pursuant to ¶ 8, this future reassignment was to be made to the attorney for Farmingdale to hold in escrow and not Farmingdale itself. The language of the Assignment Agreement unequivocally called for the complete divestiture of control from Farmingdale to Lasercad. Under the Assignment Agreement, Farmingdale clearly retained no reversionary interest in the Lease, and therefore, such a transfer constitutes an absolute assignment of the leasehold in which Lasercad became directly liable to the original landlord. *See, Murray Hill Mello Corp. v. Bonne Bouchee Restaurant*, 113 Misc.2d 683, 449 N.Y.S.2d 870, 872 (1982). There is no language anywhere in the Assignment Agreement which indicates that the leasehold was reassigned to Farmingdale immediately or contemporaneously with its execution.

Indeed, Farmingdale even contradicted its current position by admitting in its Answer, Counterclaims and Third Party Complaint dated November 7, 1987 ("Farmingdale's Answer") that it had not executed on the reassignment but only that "Defendant is entitled to execute on the reassignment and take possession of the leasehold prem-

ises." (Farmingdale's Answer at ¶ 25). Furthermore, Farmingdale stated as follows:

> The Assignment, and Lease applicable thereto, *were in fact assigned back to Defendant's attorney, and held in escrow by same*, thereby allowing Defendant to immediately execute upon the assignment back to Defendant upon default by the Debtor of Debtor's obligation under the assignment. (emphasis added).

Farmingdale's Answer at ¶ 26.

It is clear that the mere signing of the Assignment Agreement was insufficient to create a security interest in favor of Farmingdale. Rather, Farmingdale had to actually fulfill all of the conditions subsequent to the default by Lasercad in order to have a valid physical delivery of the escrowed property to effect the transfer of the Leasehold Property. *See, In re Cobham Enterprises, Inc.*, 72 B.R. 779, 781 (S.D.N.Y.1987). Under New York law, ownership of property placed in escrow remains with the party depositing the property until the occurrence of the condition specified in the escrow agreement. *Id. See also, In re O.P.M. Leasing Services, Inc.*, 46 B.R. at 667; *Press v. Marvalan Industries, Inc.*, 422 F.Supp. 346, 349 (S.D.N.Y.1976); *Stanton v. Miller*, 58 N.Y. 192, 201 (1874).

Furthermore, it appears that the drafter [or drafters] of ¶ 8 of the Assignment Agreement included language from a sublease agreement (*i.e.* "rent" and "summary proceeding") even though the Assignment Agreement itself, read in its entirety, clearly contemplated a complete divestiture of control from Farmingdale to Lasercad without any reversionary interest. It is well established law in New York that an assignor of a lease cannot maintain a summary proceeding for eviction against its assignee. *Murray Hill Mello v. Bonne Bouchee Restaurant*, 449 N.Y.S.2d at 874 (citing *Lo Russo v. Great 110, Inc.*, 59 Misc.2d 40, 298 N.Y.S.2d 61 (1969); N.Y. Real Prop. Actions and Proc. Law § 721 (1977). Thus, it is clear that under New York law, for Farmingdale to ever have had a possessory right in the Lease, it was

necessary for Lasercad to reassign the Lease (or the Assignment Agreement) to Farmingdale as security of performance of its obligations or for Farmingdale to obtain a leasehold mortgage. However, neither of these methods of creating a security interest were accomplished by Farmingdale. Hence, the Lease is property of the estate since at the time of the commencement of this case, a reassignment to Farmingdale had not occurred.

Summary judgment is usually unavailable where the movant seeks a determination with respect to motive and intent. *Empire Elec. v. United States*, 311 F.2d 175, 180 (2d Cir.1962); *Cali v. Eastern Air Lines, Inc.*, 442 F.2d 65, 71 (2d Cir.1971). Moreover, as recently reiterated by the Second Circuit, " 'summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated.' " *Balderman M.D. v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989) [quoting *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)) ]; *see, Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *see also, In re Wingspread Corp.*, 107 B.R. 456, 459, (Bankr.S.D.N.Y. July 13, 1989). However, in this instance, even if the intent of the parties was to reassign the Lease, as a matter of law, such a reassignment never occurred.

Thus, this Court concludes that the plain language of ¶ 8 of the Assignment Agreement expressed an intent to create an escrow of the Assignment Agreement. Farmingdale has no lien or other interest in the Leasehold Property and therefore Farmingdale is merely an unsecured prepetition creditor against this estate.

2) *Whether State Bank is a Bona Fide Purchaser who acted in good faith, without either actual or constructive notice of Farmingdale's alleged prior collateral security interest.*

■ Although it has been previously concluded that the Assignment Agreement merely contemplated the creation of an escrow and not the creation of a security interest in favor of Farmingdale, it is still necessary for this Court to determine whether State Bank knew or should have known that an escrow existed or that some type of security interest was being asserted by Farmingdale.

It is a fundamental precept of real property law that an unrecorded conveyance is void as against any subsequent good faith purchaser. As stated previously, the New York Recording Act codifies this principle and provides in pertinent part as follows:

A conveyance of real property, within the state .... may be recorded.... Every such conveyance not so recorded is void as against any person who subsequently purchases .... the same real property or any portion thereof ... in good faith and for a valuable consideration, from the same vendor or assignor ... and whose conveyance, contract or assignment is first duly recorded....

N.Y. Real Prop. Law § 291 (1978).

The policy behind the recording statute is twofold. "First, it was intended to protect the rights of innocent purchasers who acquire an interest in property without knowledge of prior encumbrances.... Second, the statute was designed to establish a public record which would furnish potential purchasers with notice, or at least 'constructive notice', of previous conveyances and encumbrances that might affect their interests." *Andy Assoc., Inc. v. Bankers Trust Co.*, 49 N.Y.2d 13, 399 N.E.2d 1160, 1164, 424 N.Y.S.2d 139, 143 (1979).

A lease for a term exceeding three years constitutes "real property" and conveyance of that lease is recordable under § 291, N.Y. Real Prop. Law §§ 290.1, 290.3 (1978). *See, 487 Elmwood, Inc. v. Hassett*, 83 A.D.2d 409, 445 N.Y.S.2d 336, 339 (4th Dep't 1981); 2 Powell, *The Law of Real Property*, § 221[2] 1982.

Section 291 of the N.Y. Real Prop. Law clearly provides that an assignment of a lease for a security interest constitutes a conveyance, and may thus be recorded. *In*

re Hardway Restaurant, Inc., 31 B.R. 322, 329 (Bankr.S.D.N.Y.1983). In the case at hand, Farmingdale's position is that the Assignment Agreement was an assignment of the lease for a security interest. Thus, under § 291, Farmingdale had the opportunity to record the Assignment Agreement, but did not do so. This section further states that a conveyance of real property, if unrecorded, is void against a bona fide purchaser or against the holder of a recorded lien arising from a purchase money mortgage of that property. *In re Euro–Swiss Int'l. Corp.*, 33 B.R. 872, 880–81 (Bankr.S.D.N.Y.1983); *see*, N.Y. Real Prop. Law § 291 (1978). It is undisputed that State Bank's mortgage was "first duly recorded" and Farmingdale's alleged security interest was unrecorded. Thus, pursuant to § 291, Farmingdale's alleged interest is void as to State Bank unless it can be demonstrated that State Bank was not a bona fide purchaser at the time it made the loan to Lasercad and obtained the Leasehold Mortgage as security therefor.

A bona fide purchaser or holder of a mortgage is one who has purchased or taken the mortgage in good faith without notice and for valuable consideration. *In re Hardway Restaurant, Inc.*, 31 B.R. at 327; N.Y. Real Prop. Law § 291. As this Court has previously noted, under New York law:

> notice sufficient to bar a purchaser from avoiding an unrecorded interest by a bona fide purchaser may arise by (a) actual knowledge ... (b) constructive notice of what may be revealed by an examination of the record ... and (c) possession by a third party.

*In re Hardway Restaurant, Inc.*, 31 B.R. at 329.

## CONSTRUCTIVE NOTICE

Farmingdale contends that even though it did not record its alleged security interest in the Leasehold Property, State Bank was on constructive notice that Farmingdale had such a priority security interest.

Under New York Law, State Bank would be charged with constructive notice of all matters which are in the record. *In re Hardway Restaurant, Inc.*, 31 B.R. at 330; *See also, Doyle v. Lazarro*, 33 A.D.2d 142, 306 N.Y.S.2d 268 (3d Dep't 1970), *aff'd*, 33 N.Y.2d 981, 309 N.E.2d 138, 353 N.Y.S.2d 740, (1974). After examining the records, State Bank would be required to inquire further if any defect was revealed in Lasercad's title. *In re Hardway Restaurant, Inc.*, 31 B.R. at 330; *see, Andy Assoc., Inc.*, 49 N.Y.2d at 20, 399 N.E.2d at 1163–64, 424 N.Y.S.2d at 143. "If no inquiry is made, the purchaser is charged with what a reasonable inquiry concerning the defect would have revealed." *In re Hardway Restaurant, Inc.*, 31 B.R. at 330; *See, e.g., Williamson v. Brown*, 15 N.Y. 354, 362 (1857). However, the facts in this case do not show the presence of any such defect which would charge State Bank with a duty of further inquiry. No such claim or interest was apparent on the face of the public record at the time that State Bank, as part of its due diligence, conducted a title search of the property.

In the case of *In re TMH Corp.*, 62 B.R. 932 (Bankr.S.D.N.Y.1986), for instance, the court was also confronted with the issue of whether an unrecorded security interest could defeat the claim of a subsequent good faith purchaser. In the *TMH* case, the court agreed with the *Hardway* decision "that where the debtor-seller is in possession of the premises, able to produce apparently genuine original documents of title and a current estoppel certificate from the landlord and the purchaser has no reason to question their validity no further inquiry is required." *In re TMH Corp.*, 62 B.R. at 936. Furthermore, the *TMH* court recognizing that the matter before it was distinguishable from the *Hardway* case stated as follows:

> Here, as TMH possesses neither the original Lease nor an original of the lease assignment instrument through which it claims to have obtained its right to possession of the subject premises, the purchaser must engage in the next level of inquiry.

*Id.* at 936.

The present situation is, however, analogous to the *Hardway* case in that Lasercad exhibited all the requisite indicia consistent with ownership. Lasercad occupied the premises; it obtained pursuant to State

Bank's requirement a Memorandum of Lease from Staller recognizing Lasercad as tenant; and it presented to State Bank a fully executed "original" of the Assignment Agreement, establishing Lasercad's interest in and to the Lease. Under these facts, State Bank was under no duty of further inquiry as to any possible competing interests.

It should be noted that the existence of this fully executed "original" is critical to this Court's determination that State Bank was under no duty of further inquiry as to Farmingdale's possible interest. Based on this record as presented, it is unclear whether the Assignment Agreement was ever actually escrowed. In any event, even if an escrow had been created, it was subsequently released upon the delivery to State Bank of a fully executed "original" Assignment Agreement.[6] Consequently, if an escrow had, indeed, been created by the language of ¶ 8 of the Assignment Agreement, then the escrow had been released. Thus, any restriction upon transferring the leasehold terminated by providing State Bank with the title document.

Farmingdale alleges, however, that ¶ 8 of the Assignment Agreement should have put State Bank at the very least on inquiry notice that Farmingdale might have some type of interest in the Leasehold Property. (*See,* Affidavit of John E. Westerman at ¶ 6.) This Court disagrees. The presentation of a fully executed original Assignment Agreement by Lasercad clearly led State Bank to the reasonable and logical conclusion that the condition contemplated by ¶ 8 was fulfilled and the escrow terminated. State Bank as a lender cannot be required to undertake unreasonable inquiry. Where, as here, a borrower presents conclusive evidence of legal title to its collateral unencumbered by any lien or security interest, the reasonable prudent lender cannot be expected or required to make any additional inquiry.

Farmingdale also contends that it only released the signed original "copy" out of escrow to show State Bank who had title to the premises, and not to relinquish its alleged security interest in the leasehold.

(Transcript at 42.) However, this Court has previously held that "[c]onduct inconsistent with the escrow is sufficient for the court to conclude it abandoned." *In re Ellison Assoc.,* 13 B.R. at 669.

Finally, Farmingdale asserts that the inquiry that ¶ 8 of the Assignment Agreement should have evoked is further evidenced by the fact that, in an unrelated transaction, Sunrise Federal Savings and Loan ("Sunrise") in entering into a sublease with Lasercad acknowledged Farmingdale Food's prior lien and required a Non–Disturbance Agreement to be executed by Farmingdale. Farmingdale thus concludes that "[i]f Sunrise could conclude on the basis of the Assignment Agreement alone that Farmingdale [ ] held a lien against the Lease, then State Bank must have known and concluded on the basis of the Assignment Agreement, Sunrise Sublease and Non–Disturbance Agreement and, applicable Financial Statement, that Farmingdale [ ] had a prior interest in the Lease." (Affidavit of John E. Westerman at ¶ 10.) However, Sunrise's view of the Assignment Agreement is irrelevant. Unlike State Bank, Sunrise was not in possession of a fully executed "original" Assignment Agreement bearing the signature of Sam Zeibaq, Farmingdale's President, which was verified by Jack Easa, the escrow agent, as notary public. Thus, Sunrise's due diligence in requesting a Non–Disturbance Agreement is not demonstrative of what a reasonably prudent party's or his counsel's due diligence would be under the circumstances of the State Bank transaction.

 Moreover, this Court adopts State Bank's contention that since Farmingdale was a party to the Assignment Agreement and negotiated its provisions, the failure to set forth a security interest in clear, recognizable terms must be laid at Farmingdale's door, and not that of a subsequent good faith purchaser.

## ACTUAL KNOWLEDGE

Consistent with the fact that State Bank cannot be charged with constructive notice of Farmingdale's alleged security interest

---

6. *See,* discussion, *supra,* at 795–96.

is the conclusion that State Bank had no actual knowledge of any competing interest. As discussed previously [7], a fair reading of ¶ 8 of the Assignment Agreement and the presence of multiple executed copies thereof would not provide a bona fide purchaser with actual knowledge of a competing security interest. Rather, a bona fide purchaser for value is entitled to draw the logical inference that the escrow created by the language of ¶ 8 had either never been consummated or had been relinquished. Thus, based on the presentation of a fully executed "original" Assignment Agreement, the only actual notice that can be imputed to State Bank is the knowledge that either Farmingdale released the escrow or failed to consummate it. Under either scenario, State Bank had no duty to make an additional inquiry in reaching its ultimate decision to loan Lasercad money in return for a security interest on the Leasehold Property.

Additionally, Farmingdale contends that the 1984 financial statement of Lasercad which scheduled a debt owed to Farmingdale in the amount of $290,000.00 secured by the leasehold, which was concededly in State Bank's possession prior to the extension of the loan, constitutes evidence that the bank had actual notice of Farmingdale's lien. Although Farmingdale asserts that it kept a security interest in the leasehold, the release of a fully executed "copy" of the Assignment Agreement into the public domain was tantamount to acknowledging that it no longer had any security interest in the subject leasehold. Thus, State Bank's request for an original document of title, which was supplied by Lasercad, was the only due diligence required under the circumstances.

It is clear that irrespective of whether Farmingdale did, indeed, have some type of security interest in the leasehold, State Bank had no actual or constructive notice of any alleged interest by Farmingdale in the leasehold. Thus, by operation of law under the New York Recording Statute, State Bank prevails with respect to its recorded Leasehold Mortgage over Farmingdale's interest, if any, in the Lease.

Based on the foregoing, it is the determination of this Court that State Bank's interest is superior to Farmingdale's, and thus State Bank is entitled to partial summary judgment on this issue.

3) *Whether the Trustee has a superior interest to that of Farmingdale pursuant to Section 544(a)(3) of the Code.*

■ Although the following discussion may be purely academic as it is doubtful that there will be any additional funds for distribution after the administrative claims and the State Bank's claim are paid, this Court will now address the remaining § 544(a)(3) issue.

Farmingdale claims that since the Assignment Agreement was recorded by State Bank in conjunction with its recordation of its Leasehold Mortgage prior to the Filing Date, the Trustee cannot avoid Farmingdale's interest in the Lease under § 544 of the Code. In contrast, the Trustee maintains that its interest is also superior to Farmingdale's as Farmingdale is merely a pre-petition general unsecured creditor of the Debtor's estate and its claim is not entitled to priority treatment. The Trustee argues that the placing of the document on record in connection with the Loan from State Bank evidenced that the interest had been released. Moreover, the Trustee maintains that even had the interest been properly recorded, it did not create a security interest. Thus, the Trustee asserts that although Farmingdale may have intended to create a security interest, the document itself is insufficient to put a third party on either constructive or actual notice of that intent.

Section 544(a)(3) of the Code provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
(3) a bona fide purchaser of real property ... from the debtor, against whom

---

7. *See,* discussion of Issue 1, *supra,* at 798–801.

applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser ... at the time of the commencement of the case, whether or not such a purchaser exists.

Thus, based on the previous discussion regarding State Bank's status as a bona fide purchaser, pursuant to New York Real Property Law § 291, Farmingdale's interest is void as to the Trustee unless it can be demonstrated that a bona fide purchaser at the time the bankruptcy case was commenced would have had either actual or constructive knowledge of what may have been revealed by an examination of the records of Farmingdale's alleged unrecorded security interest.

Farmingdale alleges that a bona fide purchaser would have had either actual or constructive knowledge of its alleged security interest because the Assignment Agreement was recorded as of the date of the bankruptcy filing. However, Farmingdale fails to mention that the Assignment Agreement was recorded by State Bank only in conjunction with State Bank's Leasehold Mortgage. As stated previously, the plain language of the Assignment Agreement indicates that merely an escrow may have been created and thus, placing the document on record in connection with the Loan from State Bank evidenced that the interest had been released. Furthermore, neither the Non–Disturbance Agreement nor the financial statements which were before State Bank were public records at the time of the filing and thus, Farmingdale's assertion that a bona fide purchaser would have had notice is even less compelling in this instance. As previously stated, a purchaser is required to inquire as to any defect in title that may have been revealed from the record. *In re Hardway Restaurant, Inc.,* 31 B.R. at 330. On the date of the bankruptcy filing, there was no indication from the record that there were any defects in title and thus, there would have been no duty for a purchaser to make any additional inquiry. Hence, under New York law, the Trustee as a bone fide purchaser pursuant to § 544(a)(3) may avoid Farmingdale's alleged unrecorded security interest.

## IV. CONCLUSION

Based on the foregoing analysis, this Court finds that State Bank is hereby entitled to a grant of partial summary judgment declaring that it holds a perfected first priority security interest and mortgage upon the leasehold interest of Lasercad in the Leasehold Property which attaches to the proceeds of said leasehold interest pursuant to this Court's Order dated April 20, 1989. However, at this juncture it is premature for this Court to fix State Bank's claim because the amount sought by State Bank includes attorneys fees, costs and expenses, which have not been submitted for review by this Court. Additionally, State Bank's claim may also have to be adjusted to account for the Trustee's alleged necessary costs and expenses associated with the sale of the Leasehold Property under § 506(c) of the Code, and therefore, directs the Trustee submit his application in this regard forthwith.

This Court holds that Farmingdale's Cross–Motion is hereby denied in all respects.

Submit an order in accordance with this opinion.