**Herman I. TAITT, Plaintiff-Appellant,**

v.

**CHEMICAL BANK, Defendant-Appellee.**

**No. 154, Docket 86–7466.**

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1986.

Decided Jan. 26, 1987.

Sidney B. Silverman, New York City (Joan T. Harnes, Harold B. Obstfeld, Martin H. Olesh, Silverman & Harnes, New York City, of counsel), for plaintiff-appellant.

Stanley Futterman, New York City (Robert K. Strauss, Epstein Becker Borsody & Green, New York City, of counsel), for defendant-appellee.

Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal by Herman Taitt from a judgment of the United States District Court for the Southern District of New York, Carter, J., dismissing his complaint for lack of subject matter jurisdiction after a motion for summary judgment. Taitt charged Chemical Bank (Bank) with retali-

atory discharge, pursuant to 42 U.S.C. § 1981 (1982). The district court ruled that Taitt's claim was reserved in the first instance to the dispute resolution mechanism provided by a consent decree approved in *Plummer v. Chemical Bank*, 579 F.Supp. 1364 (S.D.N.Y.1984) (Conner, *J.*).[1] Taitt does not dispute that he is bound by the consent decree but argues that his section 1981 claim is independent of the discrimination claims settled in *Plummer*. Judge Carter ordered Taitt's claim dismissed on May 19, 1986, effective on the condition that the Bank consent to the jurisdiction of the special master appointed in the *Plummer* litigation. When the Bank consented on May 29, 1986, judgment was entered and the order became final and appealable under 28 U.S.C. § 1291 (1982).

## BACKGROUND

Herman Taitt was evidently a stellar performer during most of his twenty-four years in the employ of Chemical Bank. He was the first black employee to achieve various career milestones and service honors and became the highest ranking black officer of the Bank when he was made a vice-president.

In 1980, certain other Bank employees filed a class action charging that the Bank had engaged in racially discriminatory practices in violation of 42 U.S.C. §§ 1981 and 2000e *et seq. See generally Plummer*, 579 F.Supp. at 1365–74 (describing factual and procedural background and approving the consent decree referred to throughout this opinion). Taitt was not a named party in the several *Plummer* actions but was a member of the plaintiff class. Taitt actively opposed three proposed consent decrees arising out of the *Plummer* negotiations including the decree that was ultimately entered. At some point during this time, his career turned downward. He was passed over for an expected promotion, his job responsibilities dwindled, and shortly after the final consent decree issued, he

---

1. Judge Conner's decision concluded a series of attempts by the parties to reach a settlement.

That decision and the earlier cases cited *infra* are referred to collectively here as *"Plummer."*

was fired. Taitt sued in the district court, claiming that the Bank acted in retaliation for his opposition to the consent decree. The Bank countered that Taitt's job performance became unsatisfactory during the period in question.

The district court declined to rule on the merits of the case, deciding instead that Taitt's complaint of retaliation, although distinct from claims of discrimination, nevertheless arises under the *Plummer* consent decree and must initially be resolved under the terms of that decree.

### The Plummer *Consent Decree*

The decree approved by the *Plummer* Court is conciliatory in tone. It provides affirmative goals for hiring, training and promoting qualified black employees. Although not admitting any past racially discriminatory practices, the Bank agreed to set aside $400,000 for lump sum promotion payments to be disbursed to black employees upon their promotion within the Bank hierarchy. Payment amounts are indexed to the delay in promotion putatively attributable to the past promotion practices. The consent decree earmarks additional funds for scholarships and for recruitment and development of black employees.

The decree itself makes clear that the primary intention of the parties was to provide specific remedies for alleged past discrimination in return for abandonment of those allegations. Section I describes the underlying discrimination complaint. Sections III and VI disclaim any admission by the Bank or findings by the court that the complaint is valid and proscribe use of the decree as evidence of unlawful acts. Section IV describes the purpose of the decree to "resolve[ ] in full any and all claims which have been or which could have been advanced against defendant ... involving alleged discrimination based on race ... past or present, up to and including the effective date of this Decree subject only to the provisions of Section XVII." Sections VI through IX provide a three year affirmative action program designed in meticulous detail to remedy alleged past discrimination.

In section X, entitled "Equal Employment Open Door Policy," the *Plummer* consent decree declares that "[t]his Decree favors the internal resolution of disputes arising hereunder. It is the parties' intention to encourage Black Employees who have EEO complaints or complaints concerning the implementation of this Decree to utilize the internal procedures set forth herein." Section X goes on to specify internal dispute resolution procedures, which begin with an optional discussion with the employee's supervisor, progress through existing personnel mechanisms and culminate in recommendations to the Bank by an ombudsman. An ombudsman was appointed by and is paid by the Bank in accordance with the terms of the decree.

The decree provides for appeal to a special master if the internal procedures fail to resolve a complaint. The special master would be selected and appointed by the district court and compensated by the Bank in an amount fixed by the court. Consent Decree § XI. The decree specifies that the "Court's order of reference shall set forth the scope and responsibilities of the Special Master ... in any matter where there has been a recommendation by the Ombudsman." *Id.*

The *Plummer* Court retained jurisdiction, 579 F.Supp. at 1368, and the consent decree refers the parties back to the court if the special master's review leads to an unsatisfactory conclusion. Consent Decree §§ II, XVII. Other sections of the decree deal with performance appraisals, reporting, consultants and dissemination of information.

Finally, the consent decree addresses, in scattered sections, the extent to which the parties' rights are affected. Under section IV, "Effect of Decree," the members of the plaintiff class waive their rights to pursue before any forum claims of discrimination with respect to Bank activities prior to or as of the effective date of the decree. This section contains the only waiver of rights clause by the plaintiff class. Class members pursuing such claims "shall not share

in any monetary or other benefits provided by this Decree." *Id.* § IV.

Section X, after detailing the internal dispute resolution procedures, provides that: "(3) Except as may be specifically provided in this Decree, nothing in this or any other section hereof shall serve as a waiver of the Bank's or Black Employee's rights under any statute, law, ordinance, regulation, rule or executive order."

Finally, the decree addresses retaliation, which is the gravamen of Taitt's complaint in the present action:

XVIII. *HARASSMENT OR RETALIATION*

> The Bank agrees that it shall not harass or retaliate against any Black Employee because of his or her role in the formulation of or participation in this Decree, and that such participation shall have no adverse effect upon any person's promotional opportunities, salary, treatment or personnel record. *No class member shall be deemed to have waived any claim under any statute that the Bank has retaliated* against him/her because of his/her active participation in activities in connection with this litigation.

*Id.* § XVIII (emphasis added).

### *The District Court Opinion*

The district court ruled that Taitt's retaliatory discharge claim is neither barred by the consent decree nor relegated to the decree's internal grievance procedures. Nevertheless, the court granted the Bank's motion for summary judgment because it found that Judge Conner's order of reference to the special master provided an appropriate and exclusive forum for Taitt's claim. Accordingly, the court ruled that the result in *Plummer* was *res judicata* as to the appropriate forum for Taitt's claim and that only the special master is competent to provide that forum. Taitt's access to the courts was limited to appeal to the district court of the special master's determination.

### DISCUSSION

The issue that we must decide is whether the result in *Plummer* requires Taitt to submit his retaliatory discharge claim in the first instance to the special master. Taitt claims that the consent decree does not address class members' retaliation complaints except to guarantee the right to pursue such complaints according to statute, including choice of forum. In his view, his retaliation claim does not arise under the consent decree and cannot be limited by the terms of that decree.

We agree that the parties did not intend to use the consent decree procedures to resolve retaliation claims. Therefore, we reverse the decision of the district court and remand for further proceedings.

*United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975), teaches that a consent decree is to be construed for enforcement purposes as a contract. The district court rested its construction on its finding that the retaliation claim "arises under" the decree. J.App. at 270. Although this conclusion may be reached by interpreting one of the "four corners" of the decree, *see United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971), it is necessary that we consider what is within all four corners. We must concern ourselves with the consent decree as a whole, resolving any ambiguity in a manner that "best accords with the sense of the remainder of the contract." *National Equipment Rental, Ltd. v. Reagin*, 338 F.2d 759, 762 (2d Cir.1964).

The decree explicitly relies on the *Plummer* Court to draft and issue an order of reference setting forth the scope and responsibilities of the special master. We incorporate that order of reference into our consideration of the decree to the extent that the order and decree are consistent. In so doing, we recall our admonition in our first review of the multi-stage *Plummer* action that "[t]he district court judge should not take it upon himself to modify the terms of the proposed settlement de

cree, nor should he participate in any bargaining for better terms." *Plummer v. Chemical Bank,* 668 F.2d 654, 655 n. 1 (2d Cir.1982). Accordingly, we view the order of reference as facilitating and effectuating, but not expanding, the intent of the parties as found in the four corners of the consent decree. *Berger v. Heckler,* 771 F.2d 1556, 1568 (2d Cir.1985); *see ITT Continental,* 420 U.S. at 238, 95 S.Ct. at 934; *Armour,* 402 U.S. at 681–82, 91 S.Ct. at 1757.

The focus of *Plummer* in its various incarnations was employment discrimination. *Plummer v. Chemical Bank,* 91 F.R.D. 434, 435 (S.D.N.Y.1981), *aff'd,* 668 F.2d 654 (2d Cir.1982); *Plummer,* 668 F.2d at 655–56; *Plummer v. Chemical Bank,* 97 F.R.D. 486, 488–89 (S.D.N.Y.1983). Thus, the consent decree narrowly addressed itself to racial discrimination. Consent Decree §§ I, IV, X. For example, the charter of the ombudsman provided that "[t]he Ombudsman shall be empowered to hear any complaints of class members who allege discrimination on account of race and occurring during the term of this Decree." *Id.* § X.

The conciliatory tone of the decree is particularly appropriate to the resolution of past complaints of discrimination. The decree records a bargain in which the black employees promised not to pursue past claims and the Bank promised future compensatory benefits. It is consistent with such a bargain that the decree has no mechanism for finding fault or assessing blame, presumably because the Bank's fundamental purpose in executing the decree was to escape from the allegations of discriminatory conduct. All substantive benefit to the settling employees is channeled through the promotion process. Because the Bank is committed to expending the entire $400,000 settlement fund regardless of later circumstances, Consent Decree § VIII, the sole function of the dispute resolution process is to determine *who* receives the benefits and when they are received, not *whether* they will be distributed. Employees who are not promoted do

not benefit from the fund. 97 F.R.D. at 488.

In contrast to the exhaustive treatment afforded in the decree to waiver of existing discrimination claims and compensating remedies therefor, the decree mentions retaliation claims in a single passage. That passage, section XVIII, explicitly preserves to the *Plummer* class members all rights arising from any retaliatory conduct by the Bank. The simple preservation negates any idea of waiver of the important right to pursue retaliation claims initially in the federal court. *See Warner-Lambert Pharmaceutical Co. v. John J. Reynolds, Inc.,* 178 F.Supp. 655, 668 (S.D.N.Y.1959) ("[I]f there be no ambiguity or uncertainty in the contract and it is unnecessary to resort to practical construction to interpret it, it must be taken as it reads."), *aff'd,* 280 F.2d 197 (2d Cir.1960).

Neither can there be a convincing argument that the consignment of discrimination claims to the dispute resolution process binds retaliation claims to the same mechanisms. In *Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38 (2d Cir.1984), we distinguished claims of racial discrimination from claims of retaliatory discharge flowing from a plaintiff's discrimination complaint. *Id.* at 43–44. A waiver of a discrimination claim, standing alone, is insufficient to function as a waiver of a retaliation claim.

We conclude that the consent decree does not reflect an intent to resolve disputes arising from retaliatory conduct by the Bank. Furthermore, just as it would be impermissible for the district court's order of reference in *Plummer* to modify the terms of the consent decree, 668 F.2d at 655 n. 1, so it was error for the court to interpret the order of reference in a manner that departs from the bargain struck by the parties and recorded in the decree. Taitt's retaliation claim must be heard in the first instance by the district court, not by the special master.

The judgment of the district court is reversed and the matter is remanded to the

district court for proceedings consistent with this opinion.