### In re PAN TRADING CORPORATION, S.A., Debtor.

**Robert FISHER, as Trustee of the Estate of Pan Trading Corporation, S.A., Plaintiff,**

v.

**The NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, Defendant.**

Bankruptcy No. 87–B–11662 (PBA).
Adv. No. 88–5968.

United States Bankruptcy Court, S.D. New York.

April 16, 1991.

---

Orenstein, Musoff & Orenstein by Keith S. Orenstein, New York City, Sp. Counsel, for Robert Fisher as trustee of Estate of Pan Trading Corp., S.A.

Corporation Counsel, City of New York by Peter L. Zimroth, Rita D. Dumain, New York City, for The New York City Dept. of Housing Preservation and Development.

Wilkie, Farr & Gallagher by Gary Hirsch, New York City, for Women in Need, Inc.

## MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

PRUDENCE B. ABRAM, Bankruptcy Judge.

Robert Fisher ("Trustee"), the Chapter 7 Trustee of Pan Trading Corporation, S.A. ("Pan"), has filed a complaint against the New York City Department of Housing Preservation and Development ("HPD") alleging three causes of action. In the first cause of action, the Trustee seeks to recover a $25,000 pre-petition payment made to HPD by Pan as a penalty for New York City Housing Code violations committed by Pan while operating the Holland Hotel ("Hotel"). The Trustee alleges that the payment was a preferential transfer that may be recovered pursuant to Bankruptcy Code § 547 ("Code"). In the second cause of action, the Trustee claims that under Code § 549, the estate may recover the post-petition payment of a second $25,000 pre-petition fine. In the third cause of action, the Trustee seeks to recover the $76,273.49 now in an escrow fund (the "Escrow") which was established for the purpose of creating a day-care center at the Hotel.

In its Answer and Counterclaim, HPD asserts that the first $25,000 payment was a current obligation of the Debtor which ratified the settlement of pending litigation and therefore is not a preferential transfer. Regarding payment of the second fine, HPD alleges that Pan, as a debtor-in-possession, was required to make that payment to continue Pan's business operations and, therefore, the payment is not recover-able under Code § 549. Alternatively, HPD asserts that non-payment of the second $25,000 would have entitled HPD to a judgment against Pan for $100,000 which would have been considered an administrative expense claim pursuant to Code § 503.

Finally, concerning the Escrow, HPD claims that the Trustee cannot secure the return of any or all of the Escrow because the order which established the Escrow did not provide for the return of any of the funds. HPD further claims that, in any event, as a result of an order issued by this court on November 13, 1987, which transferred the Escrow from Pan's counsel to HPD, the Escrow is no longer property of the estate. Consequently, HPD asserts it can use the Escrow for support programs at or near the Hotel even though Pan no longer has any interest in the Hotel.

An additional claim against the Escrow has been presented on behalf of Women In Need ("WIN"), a non-profit organization, whose support was enlisted in setting up and implementing the day-care facility. HPD has asserted by way of counterclaim that at a minimum, the Escrow must be used in accordance with its original purpose, to reimburse WIN for the expenditures it made in reliance on the Escrow.

The Trustee has moved for summary judgment on all counts. HPD has opposed the motion for summary judgment and has asserted that material facts are in dispute.

Based on the undisputed facts and for the reasons set forth below, this court finds that no material facts are disputed and that summary judgment in favor of the Trustee on the first two causes of action is appropriate. As to the third cause of action, the court finds that the matter can be determined on the motion for summary judgment but that the Trustee is entitled only to the return of that portion of the Escrow which exceeds the amount necessary to reimburse WIN for its itemized expenditures, and that WIN is entitled to judgment in its favor for that amount.

### Statement of Facts

Early in 1984, Pan, as lessee of Chad-

bourne Industries Ltd. ("Chadbourne")[1], began to operate the Hotel, which is located in midtown Manhattan, on 42nd Street across from the Port Authority Bus Terminal. Pan's President, Ranjit S. Ghura ("Ghura"), directed the operations of the Hotel.

On August 26, 1987, Pan filed a petition under Chapter 11 of the Bankruptcy Code. Pan continued to operate the Hotel until late December 1987, when it consented to the conversion of its case to Chapter 7.[2]

During the time Pan operated the Hotel, it was a so-called "welfare hotel" which housed otherwise homeless persons on referral from the City of New York (the "City"). The City paid Pan directly or indirectly for housing these persons.

Almost from the outset of Pan's operation of the Hotel, Pan and the City disputed whether the living conditions within the Hotel met standards required by various New York City housing laws. HPD brought suit against Pan in 1984 for Pan's alleged failure to provide proper maintenance and services. In an extended effort to settle their disputes, the parties agreed to numerous consent orders which required Pan and Ghura to take remedial action. The first of the relevant consent orders was agreed upon on May 11, 1987 (the "May Order"). Paragraph 16 of the May Order states that:

"16) Pursuant to paragraph (15) of the Consent Order of December 9, 1985 and in settlement of the application for entry of a judgment dated March 6, 1987 * * * respondents GHURA and PAN shall pay to HPD a civil penalty of twenty-five thousand dollars ($25,-000). Ten thousand dollars ($10,000) shall be paid on or before May 18, 1987 and the balance shall be paid in three (3) installments of five thousand dollars ($5,000) each, which payments

shall be made on or before June 1, 1987, July 1, 1987 and August 1, 1987, respectively."

Paragraph 17 of the May Order provides that "[t]he failure to make any such payment shall permit HPD to enter judgment against GHURA and PAN in the amount of $100,000, less any payments already made, without further notice." Between June 24th and July 10th, Pan paid HPD the $25,000 fine.

Shortly thereafter, on August 20, 1987, the parties agreed upon another consent order (the "August Order"). Paragraph 11 of that Order provided:

"11) In further settlement of this contempt proceeding, GHURA and PAN shall pay a fine to HPD in the amount of twenty-five thousand dollars ($25,-000). Payment shall be made by certified check payable to the order of HPD by September 7, 1987 and shall be sent to petitioner's attorney. The failure to make such payment shall permit HPD to enter judgment against GHURA and PAN in the amount of one hundred thousand dollars ($100,000) without further notice."

In addition, GHURA and PAN were required by the August Order to deposit $50,-000 into an interest-bearing escrow account which already contained $26,000.[3] Provisions 9 and 10 of the August Order enumerate the conditions of the escrow. They provide as follows:

"9) GHURA and PAN shall provide fifty thousand dollars ($50,000) to be used for architectural fees, construction costs, furniture, equipment and other supplies and materials to be used in conjunction with the day care center to be constructed at the Holland pursuant to Consent Orders of December 9, 1985 and May 11, 1987 and for a drug and/or alcohol education program to

---

1. Chadbourne is in bankruptcy, Case No. 85-B-11169 (PBA). It filed a voluntary Chapter 7 petition on July 19, 1985.

2. When Pan's case was converted, the operation of the Hotel was taken over by the Chapter 7 Trustee of Chadbourne, who was granted limited operating authority. In Spring 1988, the City contracted to purchase the Hotel from the Chad-

bourne Trustee and became the owner of the Hotel in Fall 1988.

3. Since no escrow account is mentioned in the December, May, or August Orders, it is evident that the original escrow account must have been established before these orders were signed.

be conducted by a public or private agency either at the Holland or at a facility located near the Holland, as selected by HPD, HRA or the SRO office. Twenty-five thousand dollars ($25,000) shall be placed in escrow with respondents' attorney by August 28, 1987. Said moneys shall be released by respondents' attorney within five (5) days after receiving written instructions from HPD and in accordance with those instructions.

10) GHURA and PAN agree that Women–In–Need shall select the architect who will prepare all necessary plans and drawings, select construction contractors and supervise the construction of the day care center. Such contractors shall demonstrate that they are adequately insured and/or bonded. The costs related to constructing and furnishing the day care center shall be borne by GHURA and PAN in the amount of $50,000 pursuant to the December 9, 1985 Consent Order, $26,000 currently held in escrow by Morris Weintraub, Esq., plus such amounts as may be drawn from the sums to be placed in escrow pursuant to paragraph (9) herein. H.P.D. will determine the allocation of the escrow funds. GHURA and PAN shall not be obligated to provide additional funds for the day care center or the education program."

The August Order shifted the responsibility for actual planning and construction of the center from Ghura and Pan to WIN.

Six days after issuance of the August Order, on August 26, 1987, Pan filed a Chapter 11 petition. Approximately two weeks later, Pan paid HPD the $25,000 fine fixed in the August Order and deposited an additional $50,000 into the Escrow.

A month later, in a letter dated September 23, 1987, HPD wrote to counsel for Pan asking that the Escrow, which contained $76,000, be transferred to HPD "to be held in escrow by us." The letter explained the purpose of the transfer as being nothing other than a vehicle to facilitate financing the day-care project. It proposed no further changes in the Escrow, nor did it suggest an interpretation that transfer of the Escrow to HPD would alter Pan's right of ownership or vest any additional rights of ownership in HPD. At the end of the letter, it concurred in an apparent earlier suggestion made by Pan's counsel that the Bankruptcy Court's authorization would be proper and that such an order would be nothing other than a "pro forma" exercise.

The Debtor's subsequent application for an order to transfer the Escrow was on notice to HPD and annexed HPD's letter to Pan's counsel. There was no suggestion in the Debtor's application that the intention was to effect any change in the Escrow other than the change of the Escrow agent. For example, the application stated that "[t]he City of New York has requested that Orenstein [Pan's counsel] turn over the Escrow Deposit to the City of New York for the purpose of paying certain contractors for work performed at the Holland Hotel which is being operated by the Debtor."

On November 12, 1987, the bankruptcy court signed an order directing the turnover of the Escrow to HPD.[4] The order does not contain any decretal provisions that terminate the Escrow or change any of the terms of the Escrow provided for in the August Order.[5]

On February 8, 1988, after the case had been converted to Chapter 7, and upon the Trustee's timely motion, the court extended until April 26, 1988 the statutory period for the Trustee to assume or reject the Chad-

---

**4.** The order states

"that Orenstein & Orenstein, P.C. [Pan's counsel] be and it is hereby authorized and directed to turn over the sum of $76,000.00 with interest which it is holding in escrow ("Escrow Deposit") to the City of New York, Department of Housing and Preservation and Development ("HPD"), and, upon the delivery of said Escrow Deposit to HPD, Orenstein & Orenstein, P.C. shall be relieved of any and all

liability in connection with the aforesaid Escrow Deposit."

**5.** For example, the August Order provides that the escrow agent will not transfer funds immediately upon the happening of a triggering event. Rather, funds were to be released within five days after the escrow agent received written instructions from HPD.

bourne Lease. The Trustee had determined that the estate might obtain an economic benefit through assumption of the Chadbourne Lease and that preservation of the legal right of assumption for at least a limited time period would be in the best interests of the estate.[6]

The expenses for which WIN seeks reimbursement are set forth in an affidavit which HPD has submitted in opposition to the Trustee's motion for summary judgment. WIN has submitted eight invoices for a sum owed of $18,688.30.[7] The first invoice was sent prior to execution of the August Order for costs which WIN claims it incurred when it assisted in planning the children's day care facility. Under the December 9, 1985 Consent Order,[8] Pan was responsible for paying all such costs. The seven remaining invoices are for services rendered after the August Order was signed and in reliance on that order.[9] On or about March 3, 1988, WIN was informed that construction of the facility was not feasible, and WIN then stopped all work related to the facility. WIN has agreed with HPD that HPD will reimburse WIN at 80% of the amount invoiced. Thus, WIN claims, in its affidavit, it is entitled to receive $14,950.64 from the Escrow.

## Discussion

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. *See* Bankruptcy Rule 7056. The motion for summary judgment has been made and answered properly pursuant to the dictates of Rule 56 and Local Rule 13(h). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *In re Lasercad Reprographics, Ltd.*, 106 B.R. 793, 797 (Bankr.S.D.N.Y. 1989); *In re Tikijian*, 76 B.R. 304, 321 (Bankr.S.D.N.Y.1987). A fact is material only if it affects the result of the proceeding. *In re Lasercad Repographics, Ltd.*, 106 B.R. 793. A fact is in dispute only when the opposing party submits evidence that would require a trial to resolve the differences. *In re Tikijian*, 76 B.R. 304; *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The court's function when faced with a motion for summary judgment is to determine whether there exist any genuine issues of fact to be tried, and not to determine any disputed facts. *In re Ross*, 64 B.R. 829, 836 (Bankr.S.D.N.Y.1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 9 (2d Cir.1983). For the reasons more fully set forth below, this court concludes that the

---

6. Among other things, Pan was a defendant in an adversary proceeding pending in the Chadbourne case in which the Chadbourne trustee challenged the creation of the Pan/Chadbourne lease as a fraudulent conveyance.

7. The dates and amounts are as follows:

| Date | Amount |
| --- | --- |
| 3/3/86 | $1,129.74 |
| 11/1/87 | 4,112.50 |
| 1/1/88 | 5,065.00 |
| 1/1/88 | 152.48 |
| 2/1/88 | 5,435.00 |
| 2/1/88 | 94.55 |
| 3/1/88 | 1,820.00 |
| 3/3/88 | 879.03 |

8. Paragraph 5(a) of the December 9, 1985 Order states:

"If requested by the New York City Human Resources Administration (HRA) respondents shall provide a recreational area in the premises by renovating the former heaith club and/or swimming pool at a cost to respondents of not more than fifty thousand dollars ($50,000). The operation of these facilities shall be supervised by HRA which may, at its discretion, withdraw from such supervision. However, respondents shall be responsible for any and all maintenance and repairs in the entire recreational area."

9. Each of these seven invoices is for work performed by the architectural firm of McDonough Nouri Rainey & Associates, Inc. WIN has already paid $4,000 to that firm in partial payment of the bill.

material facts in this case are undisputed and the matter can be resolved on the motion for summary judgment.

### The First $25,000 Payment

The Trustee asserts that the $25,000 payment made by Pan to HPD pursuant to the May Order is recoverable because it was a preferential transfer. Under Code § 547(b), a trustee has the burden of establishing each of the required statutory elements in order to recover a preferential payment.[10] *In re Vasu Fabrics, (New York Credit Adjustment Bureau, Inc. v. Just–In Materials Designs, Ltd.)* 39 B.R. 513, 515 (Bankr.S.D.N.Y.1984). The Trustee relies on the statutory presumption of insolvency. The parties do not dispute that the Trustee established four of the five requisite elements of Code § 547(b) and this court finds accordingly.

HPD contends only that the Trustee failed to prove that the transfer satisfied Code § 547(b)(2), which requires that the transfer be "for or on account of an antecedent debt owed by the debtor before such transfer was made." HPD urges that this requirement is not satisfied because Pan made the payments in installments and therefore the obligation to pay did not arise until each payment came due. This court finds HPD's argument unavailing for two reasons. First, the law governing installment contracts does not favor HPD. Second, the settlement entered into here is not an installment contract.

■ Whether a debt is current or antecedent depends upon when it was incurred. *In re Durant's Rental Center, Inc., (Durant's Rental Center, Inc. v. United Truck Leasing, Inc.)*, 116 B.R. 362, 366 (Bankr.D.Conn.1990); *Vasu Fabrics*, 39

B.R. at 516–17. A debt is incurred when the debtor first becomes legally obligated to pay. *In re CHG International, (CHG International v. Barclays Bank)*, 897 F.2d 1479 (9th Cir.1990); *Durant's Rental Center*, 116 B.R. at 366; *In re Keeling, (Kampf v. Postal Finance)*, 11 B.R. 361 (Bankr.D.Minn.1981). Unless an installment contract is made in the ordinary course of business, a debtor generally becomes legally obligated on it on the date when the debtor originally undertook the obligation, not when each payment comes due. *In re CHG International*, 897 F.2d at 1486 (obligation to pay interest arose when loan received not when interest payments made); *In re Head, (Grant v. Blazer Financial Services)*, 26 B.R. 578 (Bankr. M.D.Fla.1983) (installment loan for household goods first becomes due on date debtor signs note; no new debt arises each time installment is payable).

■ HPD's claim that Pan's obligation was an installment contract involving four discrete and current payments is incorrect. Rather, in the instant case, the settlement agreement took the form of a single event. The obligation to pay HPD arose at the very latest on May 11, 1987, when the parties signed the consent order, which itself represented the culmination of a long series of disputes over housing violations dating back to years earlier. Installment agreements, which provide for the possibility of termination at regular intervals, can be viewed as a series of mini-contracts. Here, the parties did not enter into a series of contracts. Rather, in signing the May Order, Pan agreed to accept guilt for the violations, and the parties fashioned a reasonable payment schedule so as to assure the debtor's ability to pay, so that the long

---

**10.** Code § 547(b) provides:

"Except as provided in subsection (c) of this section, the Trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
 (A) on or within 90 days before the date of filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.];
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.]."

litigation might be brought to an end. Further, Pan did not even pay off its indebtedness according to provisions in the order which provided for separate installments. Rather, it made the first two payments very late, and then accelerated the next two, thereby avoiding an additional $75,000 penalty for breach. This court holds that under all these circumstances, the payment was for an antecedent debt. *See In re PM–II, Assoc., (Murray v. Withrow)* 100 B.R. 940, 944 (Bankr.S.D.Ohio 1989) (liability under settlement agreement was incurred at time of consent judgment, which was prior to payment, and not a contemporaneous exchange).

■ Nor can HPD be heard to argue that under Code Section 547(c)(1)(a), an exception to the Trustee's avoidance powers, that acceptance of each of the debtor's four payments represented new value in exchange for a new implicit agreement by HPD to refrain from suing PAN all over again. The well-accepted purpose of the 'contemporaneous exchange for new value' exception to the preference rules is to enable a debtor to procure necessary goods and services during the precarious period before the debtor files bankruptcy. *In re St. Louis Globe Democrat, Inc., (Mann v. Missouri General Insurance Agency, Inc.)*, 99 B.R. 946, 949 (Bankr.E.D.Mo. 1989). For the same reasons that this court determines the debt to be antecedent, it holds that successive forbearances from continuing a lawsuit does not create new value. *Matter of Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr.S.D.N.Y.1986). As explained above, HPD and Pan, by the May Order entered into a single settlement agreement, complete with terms and consequences for breach of those terms. A contract carries with it the presumption of continued validity absent explicit abrogation. It cannot be said that every point in time when the parties perform under the contract that they are, in fact, implicitly creating a new contract with identical terms to the one replaced moments earlier. In this case, the payments to the HPD represented satisfaction of a pre-existing obligation and were not contemporaneous exchanges for new value.

In addition, to invoke this exception to the trustee's powers, HPD would have to prove the specific value of its alleged forbearance. *In re Advertising Assoc.*, 95 B.R. 849 (Bankr.S.D.Fla.1989). HPD has offered no such evidence.

HPD's reliance upon *In re Coco (Sapir v. Eli Haddad Corp.)*, 67 B.R. 365 (Bankr. S.D.N.Y.1986), for the proposition that periodic payment obligations are generally not preferences is misplaced. Whereas the court in that case explained that in the "garden variety" rent case, lease payment obligations arise when they become due and payable, and not when the lease is signed, rental payments have generally been treated differently than periodic payments on other types of longer term debt. *Id.* at 370 (citing *In re White River Corporation*, 799 F.2d 631 (10th Cir.1986); *In re Mindy's Inc. (Carmack v. Zell )*, 17 B.R. 177 (Bankr.S.D.Ohio 1982); *In re Clothes, Inc. (Armstrong v. General Growth Development Corp.)*, 35 B.R. 489 (Bankr.D.N.D. 1983).

This is in part due to the contemporaneous manner in which money and services are exchanged and the facile divisibility of the separate rent payments. Generally, payments apply specifically to the period in which they are paid. *See In re C.S. Mersick & Co. (Zelman v. Esher)*, 1 B.R. 599 (Bankr.D.Conn.1979); *In re Clothes (Armstrong v. General Growth Development Corp.)*, 35 B.R. 489. Significantly, in *In re Coco*, the court held that two of the payments were not a contemporaneous exchange for new value because they were paid well after the due date. Therefore, even if this court were to apply the rules governing rent payments to this case, under *Sapir* the settlement payments which were proffered after their due dates would not fall within the statutory exception and could be avoided as preferences. *Accord In re St. Louis Globe Democrat, Inc.*, 99 B.R. 946 (check tendered late to replace a bounced check is not contemporaneous exchange for new value).

The payments in the instant case bear none of the earmarks of a contemporane-

ous exchange. The parties to the litigation settled upon a penalty to cure violations and then they set forth a schedule for payment. There was no new consideration, no contemporaneous exchange for new value, only payment upon an antecedent debt to satisfy a fine on long-standing violations.

■ HPD next argues that the transfers are not preferences because they were incurred in the ordinary course of financial affairs pursuant to Code §§ 547(c)(2)(A) and 547(c)(2)(B). The court rejects HPD's argument. In light of the untimeliness of the debtor's payments, the court need not consider whether the settlement itself took place in the ordinary course of the debtor's business.

Under the order, Pan was to pay $10,000 to HPD by May 18, 1987 and the balance in three installments of $5,000 each by June 1, July 1, and August 1, 1987 respectively. The evidence is that Pan made the first two payments 37 and 23 days late. Then Pan accelerated its last two payments so that it completed payment pursuant to the order 21 days early; the unavoidable inference is that Pan made those final payments at least under the implicit threat that the City might invoke its right under the order to enter the penalty judgment for $100,000. Thus, since the payments were not made in a timely and ordinary manner, this court finds that the transfer was not made in the ordinary course of business.

■ Finally, HPD, on the tails of its claim that housing violations and penalties arise in the ordinary course of business, asks that those penalties remain in the hands of HPD to compensate "the City and its citizens" for Pan's wrongdoing. HPD cites *Becker v. County of Santa Clara, (In re Nelson)*, 91 B.R. 904, 905–906 (N.D.Cal. 1988) for its holding, "in deference to criminal judgment," that restitution upon a criminal conviction could not be avoided as a preference. *Id.* at 905 (quoting *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)).

The court finds this argument unconvincing. Whereas the court appreciates the objectives of HPD in promoting safe hous-

ing, it can find no extraordinary public policy concern justifying an exception to the Trustee's avoidance powers for the civil fine paid in this case. In addition, no benefits would inure to the shareholders of Pan in contravention of public policy if the transfer is voided since the monies will be used for the benefit of Pan's creditors, not for its shareholders.

### The Second $25,000 Payment

■ The Trustee also seeks to recover the $25,000 payment which was made pursuant to the August Order, alleging that the payment was an unauthorized, post-petition transfer under Code § 549(a). Section 549(a) states

"The Trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court."

It is plain that the $25,000 payment was a transfer. According to the Code, a transfer is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." Code § 101(54). Since Pan gave HPD the funds, it disposed of property, and thus a transfer was effected. The fact that Pan made the disposition pursuant to a consent order does not alter its nature as a transfer.

The court must next determine whether the other conditions of Code § 549(a) have been satisfied. The requirement of Code § 549(a)(1) is fulfilled since the transfer was made after the commencement of the case. Pan paid HPD $25,000 in September of 1987, approximately two weeks after the August 26 petition date.

To fulfill the requirements of subsection (2) the transfer must be either: (1) authorized only under Code §§ 303(c) or 542(c); or (2) not authorized under the Code or by the court. The present transfer falls within the second part of the requirement since it was neither authorized under the Code or

by the court. Thus, Code § 549(a) is satisfied and the Trustee may avoid the payment and recover it for the estate. See, 4 *Collier on Bankruptcy* (15th Ed.1990) ¶ 549.03 at 549–11.

### The Escrow

■ The third claim in this summary judgment motion presents the most difficulty. The Trustee requests that the entire Escrow be returned to the estate, despite the expenses that WIN has incurred. HPD argues that the entire Escrow belongs to it. Careful analysis leads this court to conclude that neither party is entirely correct.

The word "escrow" has been defined as: "A scroll, writing, deed, money, stock or other property delivered by the grantor, promisor, or obligor into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition and then by him delivered to the grantee, promisee, or obligee."

*In re Lasercad Reprographics, Ltd.*, 106 B.R. 793, (Bankr.S.D.N.Y.1989) (quoting Black's Law Dictionary, 5th ed., 1979 at 489). According to New York law, three criteria must be satisfied before an escrow can be effectuated. First, the parties involved must agree to the terms that govern the use of the particular account. *See In re Lasercad Reprographics, Ltd.* 106 B.R. at 798; 20 N.Y.Jur.Rev.Escrow § 4 at 208. Second, the funds must be delivered to a third party. Third, the agreed-upon conditions must be fulfilled. *In re Lasercad Reprographics, Ltd.* 106 B.R. at 798; *Matter of Ellison Assoc.* 13 B.R. 661, 669 (1981), *aff'd*, 63 B.R. 756 (Bankr.S.D.N.Y. 1983). Only after the requisite conditions are satisfied, can an escrow be fully transferred to the grantee. *In re Lasercad Reprographics, Ltd.* at 798; 20 N.Y.Jur. Rev.Escrow § 16 at 223.

■ The depositor retains a right to the funds and incidents of ownership until the conditions of the escrow agreement are fulfilled. *Press v. Marvalan Indus. Inc.*, 422 F.Supp. 346, 349 (S.D.N.Y.1976). By requiring these conditions to be satisfied prior to any transfer, the underlying purpose of an escrow, to retain an interest in the depositor until the happening of the prescribed contingencies, is furthered and preserved.

■ First, the requirement of a contract or agreement between the parties is satisfied by the August Order itself and by provisions of the December and May Orders through incorporation. A consent order embodies characteristics of both contracts and judicial decrees. However, the most fundamental characteristic of a consent order is its voluntary nature; the agreement of the parties creates the obligations of the order. *Local Number 93, Int'l Assoc. of Firefighters, AFL–CIO, C.L.C. v. City of Cleveland*, 478 U.S. 501, 519, 522, 106 S.Ct. 3063, 3073, 3075, 92 L.Ed.2d 405 (1986). *See also In re Ross (General American Corp. v. Merrill Lynch Commodities, Inc.)*, 64 B.R. 829, 838 n. 13 (Bankr.S.D.N.Y.1986). Thus, a consent order, which bears the court's imprimatur should be construed as a written contract and its meaning should be gleaned from the terms used therein. *Taitt v. Chemical Bank*, 810 F.2d 29, 32 (2d Cir. 1987). It should be read within its four corners, especially since it represents the agreement of the parties rather than the disinterested dictates of the court. *Canterbury Belts Ltd. v. Lane Walker Rudkin Ltd.*, 869 F.2d 34, 38 (2d Cir.1989). The plain meaning of the language of the order should govern the interpretation of the agreement. *In re Texaco Inc.*, 81 B.R. 820, 825 (Bankr.S.D.N.Y.1988) (citing *United States v. Atlantic Refining Co.*, 360 U.S. 19, 22–23, 79 S.Ct. 944, 946–47, 3 L.Ed.2d 1054 (1959)). However, when the language of the order is vague or ambiguous, the court may examine the circumstances and conditions existing at the time it was made to ascertain the intention of the parties. *Canterbury Belts Ltd.* 869 F.2d at 38 (citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975)). In the instant case, there is no ambiguity and the contingencies of the Escrow are contained in the consent orders.

Next, the transfer of the funds by Pan to its counsel constitutes a transfer to a third party and thus satisfies this requirement. This court's order of November 12, 1987 authorized the further transfer of the Escrow from counsel to HPD. However, the terms of the order neither expressly nor impliedly approved payment of the Escrow to HPD as grantee and the order must be read to do no more than substitute one escrow agent for another. *Cf. In re Coco,* 67 B.R. at 369.

Most significant in this case is HPD's letter to Pan's counsel which accompanied the application for the order, in which HPD revealed that it held the very understanding which the Trustee now urges—that the order was to accomplish nothing other than the appointment of HPD as the Escrow agent so that HPD could begin disbursing funds for the project. In light of its letter explaining its position, as well as the clear language of the order, HPD cannot now claim that the order was based upon any different understanding between the parties.

By directing the Escrow's transfer to HPD, the entity charged with reimbursing WIN, the order implicitly recognized the continued vitality of the Escrow. The HPD letter attached to the application illuminates this construction of the order's meaning. Thus, HPD was authorized to reimburse WIN for its expenditures.

According to the terms of paragraph 9 of the August Order,[11] the Escrow was to be used to construct a day-care center "either at the Holland or at a facility located near the Holland." [12] Since the parties used the word "Holland" without defining the term, it is apparent that the meaning of the term was susceptible of only one definition—and that definition is the Hotel as it existed when the August Order was signed. At that time, Pan had a legal interest in and ran the Hotel. Inherent in the meaning of the word Holland as used in the August Order was that Pan retain a legal interest in the Hotel.

Although out of possession, Pan maintained a legal interest in the Hotel through April 26, 1988, when the time for assumption or rejection of the Chadbourne Lease expired. Until that time, Pan could obtain control of the Hotel by assuming the Lease. Since WIN's last invoice is dated March 31, 1988, all of WIN's expenditures were made while Pan had a legal interest in the Hotel. Therefore, this condition of the Escrow was fulfilled as regards WIN's expenses. Once the time for assumption or rejection expired, Pan no longer had any legal interest in the Hotel.[13] HPD's argument fails in that the third prong of the test is not satisfied.

HPD points out that the Escrow was intended for the benefit of the day-care project only, and that there were no explicit conditions for reversion nor were there any other limiting conditions on the Escrow. HPD, however, fails to consider that in agreeing to use an escrow, it agreed to a series of express legal conditions. Had Pan intended to relinquish any control it had over HPD's expenditures, it could have made an outright one-time payment to HPD. Alternatively, it could have fashioned the payment in such a way that HPD was obligated to use it for a specific purpose. It chose not to do so. Instead, the parties agreed to an escrow, the fundamental idea of which involves a set of circumstances wherein reverter may occur. This court can derive the intentions of the parties by the language employed in the agreement, which here explicitly included the idea of an escrow. The agreed-upon conditions of that Escrow were not fulfilled. Therefore, HPD's authority to draw from the escrow terminated along with Pan's loss of legal interest in the Hotel. Pan's residual interest in the Escrow is plainly property of the estate under Code § 541(a)(1).

Had HPD and WIN acted quickly enough there would have been nothing left in the

---

11. See supra pages 871 and 872.

12. *Id.*

13. It is irrelevant that the City subsequently purchased the Hotel. PAN's legal interest in the Hotel is the condition of the Escrow.

Escrow to revert to the estate. However, the fact is they did not do so. After Pan lost its legal interest in the Hotel, the purpose of the Escrow could no longer be fulfilled. Thus, no further withdrawals could be made from the Escrow by HPD and the Trustee is entitled to the balance of the monies remaining in the Escrow after WIN is reimbursed.[14]

## CONCLUSION

This court finds that the $25,000 payment made pursuant to the May Order, was a preferential transfer as defined in Code § 547(b). Furthermore, the court finds that the second $25,000 payment, made in accordance with provisions of the August Order, was an unauthorized post-petition transfer as defined by Code § 549(a)(2)(A). Therefore, both amounts must be returned to the estate. Concerning the Escrow, since the conditions of the Escrow were fulfilled regarding WIN's expenses, WIN is entitled to be reimbursed in the amount of $14,950.64 plus interest. Regarding the remaining funds in the Escrow, there is both a failure of purpose and an unsatisfied condition since Pan no longer has a legal interest in the Hotel. Consequently, these monies must be returned to the estate.

The Trustee is directed to settle a proposed judgment on ten days notice.

---

**14.** The court prefers this analysis of the legal rights of the parties to an analysis based on the application of the Bankruptcy Code. However, it is worth noting that the court's analysis of the post-petition transfer issue with respect to Count Two appears applicable to the $50,000 deposited post-petition into the Escrow. There is an issue as to whether the ongoing nature of the work Pan was required to perform would have compelled Pan to pay for that work as part of its obligations under 28 U.S.C. § 959. A factual peculiarity makes it unnecessary to get involved with these issues: the amount that WIN is due is less than the $26,000 that was originally deposited into the Escrow long before the Chapter 11 petition was filed and which is not avoidable under any theory. Thus, it is *damnum absque injuria.*