**In re DALOW INDUSTRIES, INC., Debtor.**

**No. 1–05–19235–DEM.**

United States Bankruptcy Court,
E.D. New York.

Nov. 10, 2005.

Mark A. Frankel, Esq., Backenroth Frankel & Krinsky, LLP, New York, NY, for Dalow Industries, Inc.

Ronald L. Daugherty, Esq., Pelino & Lentz, P.C., Philadelphia, PA, for Stanley Creations, Inc.

Mitchell J. Devack, Esq., East Meadow, NY, for the Official Committee of Unsecured Creditors of Dalow Industries, Inc.

Stephen Gross, Esq., Hodgson Russ LLP, New York, NY, for Bank Leumi.

### *DECISION AND ORDER*

DENNIS E. MILTON, Bankruptcy Judge.

In its application (the "Application"), Dalow Industries, Inc. ("Dalow" or the

"Debtor") seeks an order directing Bank Leumi (the "Bank") to turn over to the Debtor's counsel Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55), the excess amount which Stanley Creations, Inc. ("Stanley Creations") paid to the Bank pursuant to the July 1, 2005 Order (the "Sale Order"). Stanley Creations opposes the Application and requests that the Court enter an order directing the Bank to pay Stanley Creations the Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) in issue.

As set forth more fully below, the Court finds that the Debtor is entitled to immediate turnover of the Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) pursuant to 11 U.S.C. §§ 105 and 542(a).

### JURISDICTION

This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2) and the Eastern District of New York standing Order of reference dated August 28, 1986. This decision constitutes the Court's findings of facts and conclusions of law to the extent Fed. R. Bank. P. 7052 requires.

### FACTUAL BACKGROUND

Dalow was in the jewelry business. Specifically, it marketed, distributed and sold gold and gemstone jewelry wholesale or on a consignment basis. Due to a loss in revenue, Dalow entered into an asset purchase agreement on May 20, 2005 with Bel–Oro International. However, on June 8, 2005, before the sale was consummated, Disons Gems, Inc., Apex Gems, Inc. and Top Creations International Ltd collectively filed an involuntary Chapter 7 petition[1] against Dalow.

On July 1, 2005, Debtor's assets were auctioned to Stanley Creations, the highest bidder. As set forth in the Sale Order, Stanley's bid provided for payment of Nine Million, Six Hundred Thousand Dollars ($9,600,000.00) at closing and Nine Hundred Thousand Dollars thereafter for a total amount of Ten Million, Five Hundred Thousand Dollars ($10,500,000.00) to be paid. Specifically, the Sale Order provided:

I. Stanley's bid is as follows:

The payment of $9,600,000 as follows:
a. By the close of business, on the day of the execution of this order ("Execution Date") payment of the secured claim of Bank Leumi (the "Bank") in the amount of $8,705,367.20 (the "Bank's Claim") (without prejudice to and subject to the right of other parties as hereinafter provided) by wire transfer pursuant to wire instruction provided by the Bank or its counsel;

b. By the Execution Date, payment of the $894,632.80 balance by wire transfer pursuant to wire instruction provided by the Debtor's Escrow account, to be held for the benefit of the Debtor and its creditors pending further order of the Court;

c. Payment of $900,000, without set-off, defenses and counterclaims as follows: $300,000 on or before December 31, 2005, and $600,000 on or before July 1, 2006 payable in the same manner as provided in b. herein or as may be further provided for by the order of the Court (the "Purchase Price").

Pg. 4, ¶ I.

On the Execution Date, Stanley Creations paid the Bank Eight Million, Seven Hundred Five Thousand, Three Hundred Sixty–Seven Dollars and Twenty Cents ($8,705.367.20), satisfying the secured

---

1. The Debtor has since converted the case to a voluntary Chapter 11 case.

claim of the Bank. However, in August 2005 it was discovered that due to an accounting error the Bank's claim included a Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) interest overpayment.

On August 22, 2005, counsel for the Debtor filed the Application which sought an Order from this Court directing the Bank to turn over the Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) in issue. On or about September 12, 2005, counsel for Stanley Creations filed an Objection to the Application and requested that this Court enter an order directing that the Sixty–Five Thousand Fifty–Four Dollar and Fifty–Five Cent ($65,054.55) be paid to Stanley Creations. On October 20, 2005, the Court conducted a hearing and reserved decision.

### ANALYSIS

I. The $65,054.55 Interest Overpayment Is Property Of The Debtor's Estate

■ To recover under Section 542 of the Bankruptcy Code, the party seeking the turnover of property of the estate must establish that the property in question is property of the estate which is in the possession, custody, or control of an entity other than the debtor, trustee or debtor-in-possession. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 206, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Mid–Island Hospital*, 254 B.R. 71,74 (E.D.N.Y.2000). It is undisputed that the property in question is in possession of an entity other than the Debtor; the remaining issue is whether the Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) constitutes property of the Debtor's estate.

Section 541 of the Bankruptcy Code provides that a debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Moreover, 11 U.S.C. § 541(a)(6) provides that "[p]roceeds ... from property of the estate" is part of the estate. In the instant case, all parties concede that Dalow owned or leased the Assets (as defined in the Sale Order) on the Filing Date and that the Eight Hundred Ninety Four Thousand, Six Hundred Thirty–Two Dollars and Eighty Cents ($894,632.80) that it received from Stanley Creations on the Execution Date was property of the estate.

■ The issue is whether the Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) remained a proceed of the estate or whether it was a property right that Stanley Creations acquired pursuant to the Sale Order. Because the Sale Order formed the basis of the agreement of the parties, it must be construed according to general principles of contract law. *See In re Betty Owens Schools, Inc.*, 1997 WL 188127, *343 (S.D.N.Y. April 17, 1997)(citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975)). "In construing such language deference is to be paid to the plain meaning of the language ... and normal usage of the terms." *Id.* (citing *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir.1985))(internal quotations omitted). Interpretation of the plain meaning of any language requires that the language be considered within the context it was written. *Ibid. See also, In re Pan Trading Corp.*, 125 B.R. 869, 878 (Bankr.S.D.N.Y.1991).

■ Consideration of the entirety of the Sale Order compels the conclusion that the Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) remained property of the estate. On July 1, 2005 a "good faith ... arm's length bargai[n]" bargain was struck between Dalow and Stanley Creations when Stanley Cre-

ations submitted the highest and best bid at the auction that was held in open Court. *See* Sale Order, p. 5, ¶ O. At closing, Stanley Creations was to make a payment of Nine Million, Six Hundred Thousand Dollars ($9,600,000.00), followed by two (2) additional payments totaling Nine Hundred Thousand Dollars ($900,000.00), making the total purchase price Ten Million, Five Hundred Thousand Dollars ($10,500,-000.00). *Id.* at p. 4, ¶ I. This purchase price "constitute[d] fair and adequate consideration and reasonably equivalent value for the Assets." *Id.* at ¶ J. The Sale Order and the record of the sale contain no provisions or support for the argument that the Ten Million, Five Hundred Thousand Dollar ($10,500,000.00) purchase price would be reduced if circumstances surrounding the Bank's secured debt changed.[2] Rather, the Eight Million, Seven Hundred Five Thousand, Three Hundred Sixty–Seven Dollars and Twenty Cents ($8,705,367.20) payment to the Bank was included in the bid to ease the distribution process by permitting the Bank to release its lien on the leased gold once Stanley Creations paid the secured debt on behalf of Dalow.

Furthermore, the plain language of the Sale Order is consistent with the Court's determination. On July 1, 2005, when the Sale Order was entered, Dalow owed a debt to the Bank. In its loan documents, the Bank pledged that if it received payment over the amount due it would refund the money.

As counsel for the Debtor accurately asserted during the October 19, 2005 hearing, this right to refund did not exist when this Sale Order was executed. Despite this fact, Stanley Creations' urged the Court to interpret the Sale Order language that states that "Stanley is purchasing *all* of the assets of the Debtor . . . includ[ing] . . . [a]ll rights, causes of action, and contract rights in favor of the Debtor" to include Dalow's right to refund. However, even if the Court entertained the idea that the right to refund was a property right in some contingent form, the language of the Sale Order would prevent the transfer of title to this contingent right because the Court did not specifically include a clause that said all assets including contingent rights as it did when it transferred the leased gold. *See* Sale Order, pp. 7–8, ¶ 4. Accordingly, the Court concludes that the Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) remained property of the estate.

### CONCLUSION

For the foregoing reasons, the Court grants the Debtor's Application and orders the Bank to turn over the Sixty–Five Thousand, Fifty–Four Dollars and Fifty–Five Cents ($65,054.55) in issue to the Debtor's counsel to be held for the benefit of the Debtor and its creditors pending further order of this Court.

IT IS SO ORDERED.

---

**2.** Stanley Creations' offer to Debtor's counsel dated June 30, 2005, which Counsel for the Official Committee of Unsecured Creditors submitted, provides further support for this position. This offer states that Stanley Creations will pay $9.6 million at closing and the remaining $900,000.00 in two installments by July 2006. Additionally, the record of the proceeding before the Court on July 1, 2005 shows that while the Bel–Oro and Aurafin offers may have been based on first satisfying the amount due to the Bank and then paying a specified amount to the Debtor's estate, the Stanley Creations' offer was constructed differently by not referencing the payout to the Bank and instead only mentioning that it was "prepared . . . to wire $9.6 million into escrow accounts." *See* July 1, 2005 Transcript, p. 37, lines 10, 11.