Village of Lake George, Respondent, *v.* Town of Caldwell et al., Appellants.

Third Department, May 8, 1957.

*F. Walter Bliss* and *Albert E. Beswick* for appellants.

*Charles E. Nichols* and *Burton Andrews* for respondent.

BERGAN, J. In the spring of 1953 the Mayor of the Village of Lake George and the supervisor of the Town of Caldwell, which embraces the village, met on the street and held conversation. The supervisor told the Mayor that the town intended to sell " the bank building " which it had acquired, located in the village, " and I think the Village ought to have it."

The Mayor said he would take the matter up with the Village Board of Trustees informally and if it was receptive to the

proposal he would let the supervisor know. A short time later the two officials again met on the street and the Mayor told the supervisor that the board approved the proposal and was prepared to offer $15,000 for the property.

Another conversation took place between the Mayor and the supervisor after this at which the supervisor said his board felt the $15,000 offer was not enough, and as a result of further informal conferences with both boards the officials reached an agreement that the village would pay and the town accept $18,000.

On June 1 a resolution was adopted by the Village Board of Trustees reciting that by reason of the need of facilities for Police Court, for hearings, and for the filing and safety of village papers, it appeared to be in the best interests of the village to purchase the property offered by the town.

The resolution authorized the Mayor to make a purchase and sale agreement for $18,000 and described the property by name and location. The minutes were subscribed by the clerk. Notice of adoption of the resolution was published in the official paper and posted in six public places. The notice contained the text of the resolution and stated it was subject to permissive referendum. (Village Law, § 139-a.)

Upon the adoption of the resolution of June 1 authorizing the Mayor to enter into a purchase and sale agreement with the town, the supervisor the following day presented to the Mayor a prepared document which he asked the Mayor to sign. This recited that the village "hereby offers to purchase from the Town of Caldwell" the bank building, described by name and instrument reference, "for the sum of $18,000 to be paid in full at the time of the delivery of the deed to the Village of Lake George, subject to permissive referendum". This instrument, signed by the Mayor, was dated June 2, 1953.

The Town Board thereupon promptly undertook the formalization of the arrangements which the supervisor had made on its behalf. On June 4 the formal offer in writing signed by the Mayor was presented to the Town Board which thereupon adopted a resolution that the town sell to the village "for a price of $18,000.00 the following real property" described with the detail customary in a deed of conveyance; and that the supervisor be authorized and directed to execute and deliver a deed.

The resolution provided that it "is subject to permissive referendum" pursuant to section 90 of the Town Law and "shall become effective thirty days after the adoption thereof provided no petition shall have been filed with the Town Clerk

in the meantime pursuant to the aforesaid section ". This resolution was signed as part of the minutes of the board by the town clerk. The resolution was published in the official newspaper of the town on June 6 and copies posted in six public places in the town.

No petition for permissive referendum under section 90 of the Town Law or section 139-a of the Village Law was filed in the clerk's office of either municipal corporation in respect of these resolutions at any time. Just before the 30-day period for filing a petition for permissive referendum under section 90 of the Town Law would have gone by, however, the Town Board adopted a resolution that " the sale " of the " former bank building be laid on the table until a later date ".

This resolution was not published or contemporaneously communicated to the Village Board or the Mayor; and some months later in the year the Mayor and supervisor met again. The Mayor said the village was anxious " to close the matter up and take title ". The supervisor did not then say that " the sale " had been tabled by the Town Board or that the Town Board had changed its mind; he said, merely: " Well, let's not be in a hurry ". Later, on November 5, the Town Board voted to rescind the resolution of June 4 authorizing the sale to the village.

In this action the village seeks specific performance of the contract of purchase and sale and has had judgment after a trial before Judge HEFFERNAN as Official Referee. The decision to make a contract in the case of a municipal corporation is evinced through the adoption of a resolution by the governing body of the corporation. (*Argus Co.* v. *Mayor of Albany*, 55 N. Y. 495; *Beckrich* v. *City of North Tonawanda*, 171 N. Y. 292; *Parr* v. *Village of Greenbush*, 72 N. Y. 463.)

Thus in the case of two contracting municipalities the meeting of the minds would be deemed to have occurred upon the adoption by the governing bodies of reciprocal resolutions relating to the same contractual subject matter. Except where the resolution is to serve an additional function, as for example, a memorandum of the agreement by the party to be charged to conform with the Statute of Frauds, it need not be in any more precise technical form than would be required to see and determine, in the light of surrounding facts, the intent of the corporation.

But the same resolution by which the municipality evinces its will to make the contract may serve as the note or memorandum in writing by the party to be charged to take the contract out of the Statute of Frauds, where it is signed by the

officer of the municipal corporation or its governing body charged with that function. The act of decision and the memorandum to make it enforcible spring simultaneously into being, as it was noted in *Argus* v. *Mayor* (*supra,* p. 501).

The resolution of the Town Board of June 4 meets the requirements of the Statute of Frauds. The Mayor had made, on authority of the village, a formal offer in a writing prepared for the town, to enter into a contract. The Town Board's resolution, subscribed by its clerk directed the sale of precisely described property for a stated price. Every essential detail for the purpose of such a memorandum was there.

The date for the delivery of the deed need not be stated in such a memorandum. Delivery will be deemed required within a reasonable time. (*N. E. D. Holding Co.* v. *McKinley*, 246 N. Y. 40; *Tobias* v. *Lynch,* 192 App. Div. 54, affd. 233 N. Y. 515.) On what may be a sufficient memorandum, see, also, *Nathan* v. *Spector* (281 App. Div. 451) decided here in 1953.

The express condition that the resolution " is subject to permissive referendum pursuant to section 90 of the Town Law and shall become effective 30 days after the adoption thereof provided no petition shall have been filed with the Town Clerk in the meantime pursuant to the aforesaid section " did not occur. Since no such petition was filed, no referendum was required. By its plain terms the resolution became effective, therefore, on July 5.

We think, as the Official Referee did, that the resolution of July 2, laying " the sale " of the property on the table " until a later date " did not suspend the running of the time in which, except for the filing of a petition for a referendum, the resolution would become effective.

It is not necessary to decide now whether, while awaiting the effective date of the resolution as thus postponed to allow for the processes of a referendum in pursuance of section 90 of the Town Law, the Town Board could have rescinded its decision to make a contract.

Its right to change its mind and rescind on July 2 in these circumstances is at least open to grave doubt. The other contracting party was at that time inescapably bound by the offer it had made. More than 30 days had expired from the passage of the resolution of the Village Board of June 1, itself made subject to the filing of a petition for referendum within 30 days and no such petition had been filed.

The Town Board could then have enforced the written offer to purchase made and delivered to the town by the authority of the Village Board. The village resolution, when read in

the light of the offer signed by the Mayor at the instance of the supervisor of the town is a sufficiently definite memorandum to be enforcible against the village and hence round out full reciprocity of obligation between the two public corporations.

When one party becomes fully bound by a contract and the other will imminently become bound in the absence of a contingency specifically provided for, it seems reasonable to hold the latter to the contract unless that specific contingency occurs.

Moreover, the Town Board necessarily knew that the obligation of the village to conform with its offer to purchase had become fully matured on July 1; and fair dealing would have required the Town Board, if it intended to change its mind about selling the property, to advise the village authorities. It argues for a legal situation in which, in effect, for some period of time it could have avoided the contract, but have enforced it against the village. Thus, even if the resolution of July 2 be deemed a recission, there are factors in the case which would tend to avoid its adverse effect on the other contracting party.

The resolution of July 2 did not, however, rescind the resolution of sale. It made no reference to the resolution of June 4. It merely states that " the sale " of the building " be laid on the table until a later date ". This could mean that delivery of the deed be held up until a date sometime after July 2. It did not disavow the contract. The term " to lay on the table " ordinarily refers to disposition of a parliamentary motion or question before a deliberative body. Unlike the resolution of November 5, which rescinded the specific resolution of June 4 by express reference to its number, the tabling of " the sale " did nothing with the resolution. Whatever may have been the intramural purpose of the July 2 resolution, we are of opinion it would be ineffective to rescind the resolution of sale.

The judgment imposes the usual requirements for payment of the agreed consideration by the village upon the delivery of the deed which it requires the town to make. The apprehension which the town expresses in its brief on the legal right or ability of the village to perform the contract of purchase thus becomes groundless. The town cannot be injured in this respect by the judgment. If the village does not pay the money agreed upon, the town need not deliver the deed.

The judgment should be affirmed, with costs.

FOSTER, P. J., COON, HALPERN and GIBSON, JJ., concur.

Judgment affirmed, with costs.