■ WESTERN NEW YORK LAND CONSERVANCY, INC., et al., Respondents, v TOWN OF AMHERST, Appellant. [773 NYS2d 768]—

Appeal from an order of the Supreme Court, Erie County (Joseph G. Makowski, J.), entered July 9, 2002. The order denied defendant's motion for summary judgment dismissing the complaint in this action seeking specific performance.

It is hereby ordered that the order so appealed from be and the same hereby is affirmed without costs.

Memorandum: Plaintiffs commenced this action seeking specific performance of an alleged agreement between plaintiff Western New York Land Conservancy, Inc. (WNYLC) and defendant, Town of Amherst (Town). Plaintiffs allege that the agreement is comprised of two resolutions passed by the Town, together with an unsigned conservation easement instrument. The first resolution, passed on December 6, 1999, specifies that the Town would enter into a conservation easement with WNYLC covering certain property known as the Nature View Park in the Town and that the Town's supervisor would sign all documents required for the easement. The second resolution, passed on December 20, 1999, authorizes payment of approximately $69,000 to WNYLC to monitor and manage the easement. On January 18, 2000, after the membership of the Town Board (Board) had changed, the Board passed a resolution rescinding the two December resolutions.

Supreme Court properly denied the Town's motion for summary judgment dismissing the complaint. The Town failed to meet its initial burden of establishing its entitlement to judgment as a matter of law on any of the grounds asserted in support of the motion (*see generally Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]). With respect to the Town's contention that the alleged agreement does not satisfy the statute of frauds and constitutes only an agreement to agree, we note that an agreement may consist of signed and unsigned writings as long as they refer to the same transaction, and parol evidence is admissible to show the connection between the writings and the defendant's agreement to them (*see Rupert v Rupert,* 245 AD2d 1139, 1141 [1997], *appeal dismissed* 97 NY2d 661 [2001], *rearg*

*denied* 97 NY2d 726 [2002]). Here, the two December resolutions are signed, one by the Town Clerk and the other by the Deputy Town Clerk (*see Village of Lake George v Town of Caldwell*, 3 AD2d 550, 553-554 [1957], *affd* 5 NY2d 727 [1958]; *see also* 61 NY Jur 2d, Statute of Frauds § 220). The conservation easement instrument, although unsigned, expressly refers to the same transaction as that addressed in the two December resolutions and covers every material term of the parties' agreement. Thus, it cannot be said as a matter of law that there was only an agreement to agree (*cf. Baxter v County of Suffolk*, 201 AD2d 603, 604 [1994]; *Shepherd v Whispering Pines*, 188 AD2d 786, 788-789 [1992]; *Ramos v Lido Home Sales Corp.*, 148 AD2d 598 [1989]; *see generally Urgo v Patel*, 297 AD2d 376, 377 [2002]).

Contrary to the further contention of the Town, we conclude that it also failed to establish as a matter of law that there was no consideration for the easement. The conservation easement instrument sets forth legally sufficient consideration for the Town's grant thereof in the form of conservation benefits and monitoring and reporting services to be provided by WNYLC (*see Laham v Bahia Mehmet Bin Chambi*, 299 AD2d 151, 152 [2002]; *see generally Sagittarius Broadcasting Corp. v Evergreen Media Corp.*, 226 AD2d 261, 262-263 [1996]). In addition, the Town failed to establish as a matter of law that the easement is a gift in violation of NY Constitution, article VIII, § 1 (*cf. Grand Realty Co. v City of White Plains*, 125 AD2d 639, 639-640) [1986].

The Town has also failed to establish as a matter of law that the alleged agreement is unenforceable on the ground that the conservation easement is of perpetual duration. Generally, one municipal body is prohibited "from contractually binding its successors in areas relating to governance unless specifically authorized by statute or charter provisions to do so" (*Matter of Karedes v Colella*, 100 NY2d 45, 50 [2003]). Here, Environmental Conservation Law § 49-0305 (1) expressly provides that a conservation easement "shall be of perpetual duration unless otherwise provided in such instrument." Finally, the Town has not established as a matter of law that the alleged agreement is unenforceable because no appropriation was made to fund it. There is an issue of fact in that respect based on evidence in the record that the money to fund the conservation easement was to come from an extra budgetary open space or green space fund.

All concur except Kehoe and Hayes, JJ., who dissent in part and vote to modify in accordance with the following memoran-

dum. Kehoe and Hayes, JJ. (dissenting in part). We respectfully dissent in part. We would modify the order by granting the motion of defendant, Town of Amherst (Town), for summary judgment in part and dismissing the first cause of action alleging breach of contract and seeking specific performance. We disagree with the majority's conclusion that there are triable issues of fact concerning whether the Town and plaintiff Western New York Land Conservancy, Inc. (WNYLC) entered into an agreement for the conveyance of an interest in real property and, if so, whether any such contract is evidenced by a memorandum signed by the Town, the party to be charged, and containing a sufficiently definite statement of the parties' mutual obligations to satisfy the requirements of the applicable statute of frauds (*see* General Obligations Law § 5-703 [2]). The majority construes three documents together—the "Deed of Conservation Easement" and two resolutions of the Town Board—as arguably satisfying the requirements of the statute of frauds and objectively manifesting the parties' mutual assent to be bound to particular obligations. The "Deed of Conservation Easement," which is undated, was never executed by any responsible official of the Town, nor was it delivered to WNYLC, the proposed "Grantee" of the proposed conservation easement. The existence of that document in its incomplete, unsigned, and undelivered form obviously does not suffice to satisfy the statute of frauds; it merely occasions the inquiry into whether there is otherwise a signed writing satisfying the statute of frauds.

The majority nevertheless supposes that the Town Board's two resolutions, signed respectively by the Town Clerk and Deputy Town Clerk, may satisfy the statute of frauds. A reading of the resolutions, however, makes it apparent that, in signing the resolutions, those Town officials were not purporting either to enter into or to evidence a contract on behalf of the Town with WNYLC, but instead were merely certifying that the written resolutions themselves conformed to what actually had transpired during the pertinent sessions of the Town Board. Plainly, neither of those officials acted as an agent of the Town authorized to execute the alleged realty contract in question. That much is apparent from the language of the first resolution itself, which authorizes the Town "Supervisor to sign all documents required for said easement." In order for the majority to consider the resolutions themselves as memoranda sufficient to satisfy the statute of frauds, the majority must go beyond equating the Town Clerk and Deputy Town Clerk with the Town Supervisor (which of course one cannot do according to the language of the resolutions themselves or under familiar principles of municipal governance) and must equate the resolu-

tions themselves with the referred-to "documents required for said easement." Of course, it is unimaginable that the Town Supervisor would have signified or formalized the Town's assent to the contract in question by affixing her signature to the resolutions of the Town Board. Thus, it is apparent that the requirements of General Obligations Law § 5-703 (2) have not been met insofar as that statute provides that a "contract . . . for the sale . . . of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, *subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing*" (emphasis added).

The majority nonetheless posits that parol evidence is admissible to show the connection between the unsigned writings and the Town's agreement to them. However, "[w]here it is clear from the writings themselves that they do not constitute a memorandum sufficient to satisfy the statute, it is immaterial . . . whether or not they accurately reflect and contain all of the pertinent terms of a prior alleged oral agreement . . . which does not purport to be authenticated by any signature of the defendants or their agent" (*Scheck v Francis*, 26 NY2d 466, 472 [1970] [internal quotation marks omitted]). "In other words, where the writings are plainly insufficient on their face, the conclusion follows, as a matter of law, that they do not satisfy the Statute of Frauds. (See, e.g., *Mesibov, Glinert & Levy v Cohen Bros. Mfg. Co.*, 245 N.Y. 305, 310-312 . . .)" (*id.*). In any event, the resolutions further fail to satisfy the statute of frauds insofar as those writings do not "contain expressly or by reasonable implication all the material terms of the [alleged] agreement . . . (*Poel v Brunswick-Balke-Collender Co.*, 216 N.Y. 310, 314; *Friedman & Co. v Newman*, 255 N.Y. 340; Restatement, 2d, Contracts, § 207 [Tent. Draft No. 4, 1968])" (*Morris Cohon & Co. v Russell*, 23 NY2d 569, 575 [1969]; *cf. Village of Lake George v Town of Caldwell*, 3 AD2d 550, 554 [1957], *affd* 5 NY2d 727 [1958] [deeming a legislative resolution sufficient to satisfy the statute of frauds where it "directed the sale of precisely described property for a stated price"]), and particularly insofar as they fail to express the requisite consideration for the conveyance (*see* General Obligations Law § 5-703 [2]). "It has long been settled that to satisfy the Statute of Frauds, the 'memorandum must contain substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from it what the agreement is' " (*Kobre v Instrument Sys. Corp.*, 54 AD2d 625, 626 [1976], *affd* 43 NY2d 862 [1978], quoting *Mentz v Newwitter*, 122 NY 491, 497 [1890]). Here, the resolutions fail to embody all material terms of a land

contract, and it is impossible to determine, upon reading the resolutions, exactly what was required of either party. The resolutions lack any definitive statement of the boundaries of the property to be conveyed, and they fail to recite any price to be paid for the easement or even any nonmonetary consideration with sufficient definiteness to give rise to even a possibility of enforcement. More fundamentally, the terms of the resolutions cannot be construed as evincing the Town's present intent to be bound to sell real property. By their terms, they merely authorize the Town Supervisor to enter into a contract in futuro. An authorization to enter into a contract cannot be construed, in and of itself, as a contract, or even as a note or memorandum thereof. Moreover, to consider the resolutions themselves as an existing contract or as memoranda thereof is to nullify, rather than to effectuate, the actual terms of those resolutions.

The *Lake George* decision relied upon by WNYLC is distinguishable from this case. The basic distinction is that, in that case, the resolution of the Caldwell Town Board amounted to an acceptance of an outstanding formal realty purchase offer whose essential and material terms were completely set forth in a writing, one authored, not incidently, by the Town of Caldwell (*see Village of Lake George,* 3 AD2d at 552-553). Therefore, when the Caldwell Town Board passed its resolution accepting the formal purchase offer, it thereby simultaneously made and memorialized a contract of sale. That much is evident from the terms of the resolution in the *Lake George* case; that resolution authorized the Town of Caldwell to sell particularly described property to the Village of Lake George for a prescribed price, further directing the Caldwell Town Supervisor to execute and deliver a deed to that effect. Thus, the Caldwell Town Board, by accepting the offer, essentially entered into a contract and authorized its performance by responsible town officials (*see id.*). In this case, in contrast, the resolutions of the Town Board did not effect an acceptance of a formal realty purchase offer. Indeed, there is no sense in which WNYLC ever formally offered to "purchase," at any named "price," any particular interest in particularly described lands of the Town.

Thus, even more basic than the issue whether there is a signed writing memorializing the contract is the issue whether the parties ever objectively manifested a mutual intent to enter into an enforceable contract to sell an interest in realty. The majority posits that the resolutions of the Town Board not only evidence but formed a binding contract, but we disagree. For that to be the case, the resolutions must have constituted either the acceptance of a formal offer by WNYLC to "purchase" the

conservation easement, which offer must have been complete and definite in all terms material to a conveyance of an interest in real property, or those resolutions must have themselves constituted an offer to convey the conservation easement (an offer likewise complete and definite in all its material terms), which offer must have been accepted by WNYLC before the Town Board revoked its authorization to the Town Supervisor to enter into a contract with WNYLC. For the reasons set forth hereinabove, the record does not support either analytical basis for concluding that the parties entered into a binding contract. Present—Pigott, Jr., P.J., Pine, Hurlbutt, Kehoe and Hayes, JJ.